IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 2000 Session

## STATE OF TENNESSEE  v.  DARYL HOOPER

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Humphreys County
No. 8995      Hon. Allen W. Wallace, Judge**

---

**No. M1997-00031-SC-R11-CD - Filed September 21, 2000**

---

The single issue in this appeal is whether the proof introduced at the sentencing hearing is sufficient to support a denial of probation based solely upon the need for deterrence.  The Court of Criminal Appeals initially affirmed the sentence and held that proof of deterrence was not needed because drug use and possession cases are "deterrable per se."  Upon the defendant's petition to rehear, however, the intermediate court reversed itself, holding that a "per se" rule of deterrence is inconsistent with the holding of this Court in State v. Ashby, 823 S.W.2d 166 (Tenn. 1991).  The State appealed to this Court.  For the reasons given herein, we hold that the proof in this case is sufficient to justify denial of probation on the sole ground of deterrence.  The judgment of the Court of Criminal Appeals granting an alternative sentence is reversed, and the defendant's original term of incarceration is reinstated.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of
Criminal Appeals is Affirmed in Part, Reversed in Part;
Appellee's Original Term of Incarceration is Reinstated**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark E. Davidson, Assistant Attorney General, Nashville, Tennessee, for the appellant, State of Tennessee.

William H. Farmer, Nashville Tennessee; Mark W. Peters, Nashville, Tennessee, for the appellee, Daryl Hooper.

### OPINION

On May 29, 1996, an Arkansas narcotics officer stopped a vehicle for a traffic violation on Interstate 40 near Conway, Arkansas.  Upon becoming suspicious that the vehicle was trafficking illegal drugs, the officer obtained written and oral consent to search the car.  While searching the

trunk of the car, the officer found twenty-three plastic bags containing a total of more than twenty-one pounds of marijuana. After being arrested and taken to the Conway Police Station, the car's passenger, Kenneth McKee, stated that he was transporting the marijuana from Albuquerque, New Mexico to the appellee, Daryl Hooper, in Humphreys County, Tennessee. McKee further explained that he was delivering the marijuana to the appellee as part of an arrangement in which the appellee would excuse certain debts owed by McKee.

Shortly after McKee gave his statement, he agreed to cooperate with the police and make a "controlled delivery" of the marijuana to the appellee. Police Chief John Ethridge in McEwen, Tennessee was contacted about arranging the delivery, and during the early morning of May 30, McKee, along with an undercover officer from the Humphreys County Drug Task Force, delivered the marijuana to the appellee at his residence. Following a short discussion with the appellee on his porch, McKee returned to the car and reported that the delivery was complete.

About three minutes after McKee and the Drug Task Force Officer drove away, other officers executed a search warrant on the appellee's residence and recovered the delivered marijuana. On June 4, 1996, the Humphreys County Grand Jury returned a two-count indictment against the appellee alleging (1) possession of marijuana over ten pounds, one gram, for resale, and (2) possession of drug paraphernalia. Following a two-day trial, a jury returned a guilty verdict on both charged offenses on June 4, 1997.

At the sentencing hearing, the appellee argued that he should be sentenced to probation rather than to a term of incarceration. In arguing that the appellee should be confined so as to deter others from committing similar crimes, the State called Chief Ethridge to testify that McEwen has a "rather serious [drug problem] for a small town," and that since 1984, more cases from McEwen have been presented to the grand jury than from any part of Humphreys County. Chief Ethridge admitted, though, that he did not believe that the drug problem was any worse in McEwen than in any other Tennessee county or that it was any worse than in the United States as a whole.

The trial judge denied the appellee's request for alternative sentencing and sentenced the appellee as a Range I standard offender to serve a total of four years in the Department of Correction.[1] In denying alternative sentencing, the court stated that the proof at trial demonstrated that the appellee was one of the major drug dealers in the county, and that "there's a whole lot of other people in this county that's out here that's wondering what's going to happen to Mr. Daryl Hooper[,] because [they] might want to ship in 25 pounds [of marijuana] instead of five or instead of one." Referring to drug abuse in Humphreys County, the trial court also stated that

I know it's a problem in this County. Mr. Ethridge has testified to it. We see just from taking the docket this time and in every other county in this circuit [that] there's

---

[1] More specifically, the appellee was sentenced to serve 4 years for possession of marijuana with intent to resell, along with a concurrent sentence of 11 months, 29 days for possession of drug paraphernalia.

just become more and more and more dope cases[,] and if we don't do something about it, it's going to ruin society . . . .

The Court of Criminal Appeals initially affirmed the appellee's sentence finding that while the proof of deterrence "was minimal at best," such crimes are "'deterrable per se,' even in the absence of a record demonstrating a need for deterrence."[2]  On the appellee's petition to rehear, however, the intermediate court reversed itself and modified the appellee's sentence so that the appellee would serve the remainder of his four-year sentence on probation following ninety days incarceration.  In addressing the issue of whether drug sale or possession is "deterrable per se," the court concluded that such an approach is inconsistent with the holding of this Court in State v. Ashby, 823 S.W.2d 166 (Tenn. 1991).   The State then requested, and we granted, permission to appeal on the following issue: whether the proof in this record is sufficient to support a denial of probation based solely on the need to deter others from committing similar crimes.

## STANDARD OF APPELLATE REVIEW

Because the appellee's crime was committed after November 1, 1989, review of the appellee's sentence is governed by the Tennessee Criminal Sentencing Reform Act of 1989.  See Tenn. Code Ann. § 40-35-117 (1997); see also, e.g., State v. Burdin, 924 S.W.2d 82, 84 (Tenn. 1996).  When either a defendant or the State challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct.  See Tenn. Code Ann. §§ 40-35-401(d), 40-35-402(d) (1997).  If our review "reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  After a careful review of the record, we conclude that the trial court did follow the proper statutory sentencing guidelines, and therefore, our review of the appellee's original sentence is *de novo* with a presumption of correctness.[3]

---

[2] The trial court also found that incarceration was needed so as to avoid depreciating the seriousness of the offense. The Court of Criminal Appeals, however, found this ground to be inapplicable on the facts of this case, because possession of 21 pounds of marijuana is not "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." The State does not challenge the propriety of this holding, and we reach no determination as to whether this ground was properly used to deny the appellee alternative sentencing.

[3] The Court of Criminal Appeals disagreed that the sentencing judge complied with the proper statutory sentencing guidelines, and it did not therefore apply the presumption of correctness. The intermediate court did not explain how the trial court failed to comply with the guidelines, although it took issue with the amount of proof supporting deterrence. Respectfully, however, our own review of the record reveals that the sentencing court did properly consider the factors and principles set forth in the 1989 Criminal Sentencing Reform Act, and we therefore review the appellee's sentence with a presumption of correctness.

-3-

**PROOF OF DETERRENCE SUPPORTING INCARCERATION**

The State argues that the sentencing court properly denied alternative sentencing to the appellee solely on the need to deter others from committing similar crimes. The Tennessee Criminal Sentencing Reform Act of 1989 recognizes the limited capacity of state prisons and mandates that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts of rehabilitation shall be given first priority regarding sentencing involving incarceration." Tenn. Code Ann. § 40-35-102(5) (1997). A defendant who does meet the criteria of section 40-35-102(5) and who is an especially mitigated or standard offender of a Class C, D, or E felony is "presumed to be a favorable candidate for alternative sentencing options . . . ." Tenn. Code Ann. § 40-35-102(6).

This statutory presumption of alternative sentencing is not conclusive, however, and the presumption may be rebutted by "evidence to the contrary." See id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Guidance as to what may constitute "evidence to the contrary"—or evidence that the defendant is a member of the population for whom incarceration is a priority—is found in Tennessee Code Annotated § 40-35-103 (1997), which states that a court may order confinement when:

> (A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Both the State and the appellee concede that the appellee is entitled to the presumption of alternative sentencing and that subsections -103(1)(A) and (C) do not apply in the case before this Court. Consequently, the only issue before this Court is whether the denial of probation was supported by sufficient evidence that confinement "is particularly suited to provide an effective deterrence to others likely to commit similar offenses."

### *Historical Use of Deterrence to Deny Alternative Sentencing*

The denial of probation or other alternative sentencing based solely upon the need for deterrence has been the subject of much controversy in the jurisprudence of this state. In Moten v. State, 559 S.W.2d 770 (Tenn. 1977), this Court reviewed a denial of probation that was grounded in part on the need to deter others from committing similar crimes. In finding that deterrence could not serve as the sole ground supporting denial of probation, this Court said:

Reliance upon this factor would defeat the whole concept of probation. While the other factors listed in Stiller [v. State, 516 S.W.2d 617 (Tenn. 1974)] may or may not be present or applicable or significant in any given case, [deterrence] is a factor which is uniformly present. Thus, even if all factors gravitate in [the] defendant's favor in a given case, probation would be defeated by the fact that to suspend the sentence would destroy the conviction's deterrent value. Reliance on this factor is no more realistic or reasonable than denying probation on grounds that the defendant committed a crime.

Id. at 773.

In its very next session, and in direct response to Moten, the General Assembly amended Tennessee Code Annotated section 40-2904(a)(1)[4] to specifically provide that a "trial judge may deny probation upon the ground of the deterrent effect upon other criminal activity." 1978 Tenn. Pub. Acts ch. 911, § 1. The General Assembly also recognized the principle that deterrence alone could serve as a basis for ordering incarceration when it enacted the 1982 Criminal Sentencing Reform Act. Section 40-43-103(1)(B) of the 1982 Act provided that confinement could be ordered by a sentencing court when confinement was "particularly suited to provide an effective [deterrent] to others likely to commit similar offenses." This exact language was later recodified as part of the 1989 Criminal Sentencing Reform Act, see Tenn. Code Ann. § 40-35-103(1)(B) (1997), although the General Assembly has yet to give any further indication of when incarceration would be "particularly suited" to provide a deterrent effect.

Shortly after the General Assembly's reinstatement in 1978 of deterrence as a ground upon which to deny probation, the Court of Criminal Appeals acknowledged in dicta that "a denial on the basis of deterrence alone must be supported by some proof that the sentence imposed will have a deterrent effect within the jurisdiction." State v. Horne, 612 S.W.2d 186, 187 (Tenn. Crim. App. 1980). This Court reaffirmed the proof requirement following the passage of the 1989 Criminal Sentencing Reform Act, when we held that "[t]he finding of deterrence [supporting denial of alternative sentencing] cannot be conclusory only but must be supported by proof." Ashby, 823 S.W.2d at 170. In so holding, we recognized that "[a]n element of deterrence is present in every case but the degree of significance of this factor in restraining the offender or curbing the propensity for criminal activity in others, varies widely with the class of offense and the facts of each case." Id. (citing State v. Michael, 629 S.W.2d 13 (Tenn. 1982)).[5]

---

[4] Section 40-2904(a)(1), which furnished grounds for granting or denying probation, was renumbered as Tennessee Code Annotated section 40-21-104 (Supp. 1984), and was later repealed by the 1989 Criminal Sentencing Reform Act. See 1989 Tenn. Pub. Acts ch. 591, § 7.

[5] As this Court stated in Michael,

In making the point that some deterrence is present in every case we did not intend to say that the factor of deterrence has exactly the same weight in every case. An element of deterrence is present in every case but the degree of significance of this factor in restraining the offender or curbing the propensity for criminal activity in others, varies widely with the class of offense and the facts of each

-5-

Because deterrence is a concept that frequently defies practical analysis, it should come as no surprise that the appellate courts of this State have had significant trouble in developing a consistent standard by which to determine when a defendant has been properly denied probation on deterrence grounds alone. At various times, courts have stated that deterrence may only be shown when: (1) crime "is rampant, or at least on the increase in the area," Horne, 612 S.W.2d at 187;[6] (2) the crime committed was "one frequently repeated by lawless members of society," State v. Kirk, 868 S.W.2d 739, 743 (Tenn. Crim. App. 1993); (3) the crime is one that is unique to a particular jurisdiction, State v. Bryant, 775 S.W.2d 1 (Tenn. Crim. App. 1988);[7] or (4) there is "some special need or consideration relative to that jurisdiction which would not be addressed by the normal deterrence inherent in any criminal penalty." State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991).

In addition to the inconsistent standard used to determine whether deterrence is properly considered, the courts have also been inconsistent as to what kind of proof can support a denial of probation on deterrence grounds. Some courts have affirmed a denial of probation when a community police officer testifies as to the need for incarceration for deterrence. See State v. McColgan, 631 S.W.2d 151, 156 (Tenn. Crim. App. 1981) (affirming a denial of probation in part on deterrence grounds when the local sheriff testified that "[Benton] county had a real problem with drug traffic and traffic in stolen property and that requiring the appellant to serve his sentence would deter others from criminal activity").[8] This Court in Ashby, however, rejected incarceration when

---

case.
629 S.W.2d at 14 (referring to Moten). We further stated that "the case law and the legislative declaration envision an examination of the deterrence factor in the context of each case and assigning it such weight, credit and value as the circumstances warrant." Id. at 15.

[6] See also State v. Brooks, 943 S.W.2d 411, 413 (Tenn. Crim. App. 1997) (affirming denial of probation when "the proof clearly showed that drug sales were rampant in this community, thereby calling for the need for general deterrence."); State v. Purkey, 689 S.W.2d 196, 201 (Tenn. Crim. App. 1984) (affirming denial of probation upon trial court's findings that "public corruption has been rampant in that area in recent months . . . [, and that] the public right to responsible public officials must be vindicated and that criminal misconduct must be punished to deter those similarly situated . . . ."). This rationale has been used to reject incarceration where the "defendant's place of residence [was in] a medium crime area." State v. Vance, 626 S.W.2d 287, 290 (Tenn. Crim. App. 1981); see also State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987) ("The trial court is apparently of the opinion that trafficking in marijuana is not a particular problem in Cocke County. Thus, the denial of probation in this instance is not necessary to deter the conduct of others in the community.").

[7] The Bryant court found that deterrence did not warrant a denial of probation after a conviction for automobile theft, because these "offenses, although serious in nature, are not peculiar to any particular jurisdiction." 775 S.W.2d at 6.

[8] See also State v. Jenkins, 733 S.W.2d 528, 535 (Tenn. Crim. App. 1987) (denying incarceration on deterrence grounds, but stating "[i]f marijuana trafficking was a particular problem in Cocke County, the State could have presented a law enforcement officer to relate this fact"); State v. White, 649 S.W.2d 598 (Tenn. Crim. App. 1982) (deterrence was supported by testimony of local sheriff that "the defendant's incarceration would deter like crimes and

the only proof of deterrence was that drugs "have become such a problem not only in this county, but in the nation as a whole." 823 S.W.2d at 170. The Ashby decision seemed to require proof that the particular defendant had an observable effect on the drug problem before denial of probation was warranted. Id. ("The trial judge noted that drugs are a problem in this country today, but there is no showing that this elderly man has had any increasing effect on the problem. There is no evidence that those likely to violate the criminal laws will be deterred by the incarceration of [the] appellant.").

Moreover, the intermediate court has been divided as to whether the sentencing judge can provide the necessary proof of deterrence through his or her own observations of facts surrounding the case. In at least one case, the Court of Criminal Appeals has rejected a denial of probation on deterrence grounds when the trial judge made his own observation "that there had been several of these type crimes in the recent past." State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997). In another case, however, the Court of Criminal Appeals affirmed denial of pre-trial diversion on deterrence grounds for a perjury charge despite the fact that the only "proof" of deterrence was the trial judge's observation of "the 'dramatic increase' in perjury in the community." State v. Perry, 882 S.W.2d 357, 360 (Tenn. Crim. App. 1994).[9]

Perhaps acknowledging the difficulty of determining whether sufficient proof of deterrence has been offered, some courts have eliminated the proof requirement entirely for certain types of crimes. For example, this Court in State v. Cleavor, 691 S.W.2d 541 (Tenn. 1985), affirmed the denial of probation for a D.U.I. offender by finding that "[t]he need for deterrence is obvious," even though the need for deterrence was not evident from the proof in the record. 691 S.W.2d at 543. In arriving at this conclusion, we acknowledged that there was "currently an increased public awareness of the need to deter persons who would attempt to drive motor vehicles while intoxicated," as well as the "growing concern" of citizens about "[t]he rising number of persons who drive while intoxicated and the rising number of deaths caused by such drivers." Id.

Following our decision in Cleavor, the Court of Criminal Appeals in State v. Dykes, 803 S.W.2d 250, 260 (Tenn. Crim. App. 1990), held that offenses involving the sale or use of drugs are "deterrable per se." In so holding, the court took judicial notice that "the gross sales and use of illicit narcotics continue to increase annually; and crimes that are directly related to the sale and use of illicit narcotics also continue to increase." Id. at 260. The court concluded by stating that

> There has been and is an increasing public awareness of the need to deter individuals
> who engage in the sale of illicit narcotics; and this awareness continues to be a matter

---

made reference to the numerous worthless check violations that occurred in Lincoln County").

[9] Although Perry is a pre-trial diversion case, deterrence in pre-trial diversion cases is guided by the same considerations as deterrence in probation cases. See State v. Hammersley, 650 S.W.2d 352, 354 (Tenn. 1983) ("Deterrence to others should not be eliminated as a matter of law and in all cases from consideration by the District Attorney General or by the trial judge in deciding whether to grant pretrial diversion; deterrence either of the individual or of others is as relevant here as in granting or denying probation.").

of growing concern. Therefore, the appellant is not entitled to probation due to the deterrent effect that such a judgment will have on those who are engaged in like or similar conduct.

Dykes, 803 S.W.2d at 260.[10]

### *Conflicting Goals of Alternative Sentencing and Incarceration Based on Deterrence*

The inconsistent application of the law after the 1989 Criminal Sentencing Reform Act may be attributed, at least in part, to the apparent conflict between the goals of the Act and the policies supporting deterrence theory generally. The 1989 Act is clear that among its purposes is the elimination of unjustified disparity in sentencing and the giving of "first priority" in prison sentencing to "convicted felons committing the most serious offenses." Tenn. Code Ann. § 40-35-102(2), (5). The rebuttable presumption of alternative sentencing in section 40-35-102(6) was drafted so as to give recognition and effect to these principles. Nevertheless, because some aspect of deterrence is present in every case, a blanket policy allowing incarceration based solely upon deterrence could do significant harm to these purposes, if not eliminate them all together.

In an effort to balance these competing interests and goals, we re-emphasize that the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated. The proof of deterrence requirement, despite its unique ability to elude definition, is perhaps the only method by which to prevent wholesale damage to the goals of the 1989 Criminal Sentencing Reform Act. In retaining the proof requirement, though, we must necessarily overrule all of the prior cases which have found certain crimes to be "deterrable per se." Although we have stated that the need for deterrence varies according to the class of the offense, Ashby, 823 S.W.2d at 170, not every infraction of a given class of offenses signals a need for deterrence. See id. Indeed, such a rationale is contrary to the notion of individualized sentencing, which underlies alternative sentencing theory under the 1989 Act generally. See State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

---

[10] Moreover, other cases have affirmed denial of probation upon deterrence grounds because the need for deterrence was "obvious" to the appellate court, even though there was no proof of this fact in the record. See State v. Leggs, 955 S.W.2d 845, 851 (Tenn. Crim. App. 1997) ("It is our opinion that the need to deter violent, unlawful behavior by those individuals entrusted with the custodial control over others, especially those incapacitated by mental retardation, is obvious."); see also State v. Lutry, 938 S.W.2d 431, 435 (Tenn. Crim. App. 1996) ("We have held that these offenses, by their very nature, need no extrinsic proof to establish the deterrent value of punishment. Cases in which fraud is involved, including forgery cases, seem to compose such a category.").

To be certain, part of the reason for the inconsistent application of the law in this area before the 1989 Criminal Sentencing Reform Act may be attributable to the abuse of discretion standard of review. See State v. Bell, 664 S.W.2d 288, 290 (Tenn. 1984) (stating that "appellate courts are not authorized to weigh the factors and substitute their judgment for that of a trial judge, but must affirm unless an abuse of discretion has occurred"); see also Tenn. Code Ann. § 40-21-104 (Supp. 1988), *repealed by* 1989 Tenn. Pub. Acts ch. 591, § 7 ("The judgment of the trial court shall be presumed to be correct and shall not be reviewable upon appeal except for an arbitrary or capricious abuse of discretion.").

Nevertheless, because we recognize the General Assembly's continued policy of allowing incarceration based solely on the need for deterrence, we cannot require that the proof of deterrence be so overwhelming as to effectively remove deterrence as a consideration.[11] Deterrence is a complex psychological process, and the focus on deterrence through changes in the penalty structure or sentencing behavior represents but one part of the calculus. Section 40-35-103(1)(B) recognizes this reality as the language of the statute requires only that confinement be "particularly suited" to provide a deterrent effect, and it does not require proof that incarceration "will" or "should" deter others from committing similar crimes. Although some cases— most notably State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995) and State v. Bonestel, 871 S.W.2d 163, 169 (Tenn. Crim. App. 1993)—have required that the record show "that the sentence imposed *will have* a deterrent effect," this standard is contrary to the language of the statute. Therefore, to the extent that Bingham, Bonestel, or any other case can be read to require proof that incarceration *will* or *should* result in deterrence, it is hereby overruled.

Although research on the deterrence aspects of criminal law has progressed since the earliest attempts to empirically study the subject fifty years ago, we doubt whether the marginal deterrence of a defendant receiving incarceration over probation can ever be proven to the extent seemingly required by some of our cases. Deterrence "involves undemonstrable predications about human behavior, but the theory is as hard to disprove as it is to prove for the same reasons. . . . However, the strength of the theory is in its generality; its foundation is in common sense and there is some evidence to support it." United States v. Lucas, 2 M.J. 834, 840 (A.C.M.R. 1976) (citing Bailey and Smith, Punishment: Its Severity and Certainty, 63 J. Crim. L. & Criminology 530, 531 (1974)). Although no system of punishments can ever ensure total deterrence, common sense tells us that the risk of unpleasant consequences should be a very strong motivational factor for most people in most situations.

Because the "science" of deterrence is imprecise at best, the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.[12]

_____

[11] We simply cannot eliminate deterrence as a ground upon which to deny alternative sentencing, because "matters relating to punishment and probation are the prerogative of the Legislature, and . . . its pronouncements so long as they pass Constitutional muster must be honored by the Courts." Horne, 612 S.W.2d at 187.

[12] Further complicating this issue is the fact that the statute at issue in this case focuses only upon that *marginal* deterrence provided by incarceration which does not already exist upon threat or expectation of alternative sentencing. It is certainly conceivable that in some cases, effective deterrence of other crimes may be achieved by the other aspects of the criminal justice system, such as arrest, trial, or even alternative sentencing itself. Nevertheless, because it may be extremely difficult to practically evaluate the marginal deterrence provided by incarceration, we can only require that the incarceration of a defendant "rationally serve as a deterrent to others similarly situated and likely

To be certain, the General Assembly has "envision[ed] an examination of the deterrence factor in the context of each case and assigning it such weight, credit and value as the circumstances warrant." State v. Michael, 629 S.W.2d 13, 15 (Tenn. 1982). Therefore, in order to facilitate more meaningful appellate review, and to ensure greater consistency in this aspect of sentencing, trial courts should consider factors, such as the following, when deciding whether a need for deterrence is present and whether incarceration is "particularly suited" to achieve that goal:

> *1)      Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.*

This factor speaks to the particular need for deterrence, and it is a slight modification of one standard that has been used by the Court of Criminal Appeals. See Horne, 612 S.W.2d at 187; Vance, 626 S.W.2d at 290. We note that this standard has typically been limited to showing that deterrence would occur in the "jurisdiction." See, e.g., State v. Bingham, 910 S.W.2d 448, 445 (Tenn. Crim. App. 1995); Horne, 612 S.W.2d at 187. Neither section 40-35-103(B)(1), nor our decision in Ashby, however, supports limiting the deterrent effect to the jurisdiction of the sentencing court. Indeed, such a limitation ignores that many crimes can have tangible effects in parts of the state other than where jurisdiction is first obtained. Accordingly, to the extent that any case does not permit proof of deterrence beyond the jurisdictional confines of the sentencing court, it is overruled.

Use of statistics may be helpful in establishing the increasing level of the particular crime in the community, jurisdiction, or in the state. See State v. Boggs, 932 S.W.2d 467, 477 & n.9 (Tenn. Crim. App. 1996). We do not require such evidence, though, and testimony by someone with special knowledge of the level of a particular crime will generally be sufficient to establish the presence of this factor.

> *2 )      Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.*

Actions that are the result of intentional, knowing, or reckless behavior or those motivated by a desire to profit from illegal activity are probably more deterrable than those which are not the result of a conscious effort to break the law. Indeed, this is the very rationale that underlies the deterrence aspect of punitive damages in tort law. See Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). Common sense tells us that we may have less ability to deter crimes which are the result of provocation, sudden and extreme passion, or even negligent behavior, irrespective of whether others who commit similar crimes are incarcerated or given probation.

---

to commit similar crimes."

*3)	Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.*

A fundamental requirement of deterrence is that others know of the punishment received. If others are generally unaware of the defendant's conviction and sentence, then the defendant's punishment cannot reasonably serve as a deterrent to others. For example, in State v. Downey, 945 S.W.2d 102 (Tenn. 1997), we recognized that advance publicity of roadblocks significantly enhanced their value as deterrents to intoxicated drivers. Id. at 111 (stating that "[w]e believe advance publicity furthers the deterrence rationale for the use of a sobriety roadblock. . . . The State's contention that advanced publicity was unnecessary because the roadblock was well-marked at the scene completely ignores the deterrence rationale."). See also United States v. Danilow Pastry Co., 563 F. Supp. 1159, 1167 (S.D.N.Y. 1983) ("Finally, deterrence is fostered by the publicity garnered by the sentences."); United States v. Braun, 382 F. Supp. 214, 215 (S.D.N.Y. 1974) (stating that "it remains a source of queasiness to realize that deterrence means 'making examples' of people (despite the moral and philosophic questions that raises); [and] that our relatively anonymous defendant adds at most to a mass of indistinguishable examples"). It should be stressed, however, that in this age of instant access to virtually all types of information, something more than a newspaper article or television report is necessary to fulfill this factor.

The defendant's crime and conviction need not be known to the community, jurisdiction, or state as a whole, so long as they are known to that discrete community of individuals likely to commit similar crimes. Criminal acts by a professional in his or her official capacity, for example, need not be publicized statewide before deterrence may be considered as a factor. In most cases, substantial publicity within the defendant's professional community would probably suffice to meet this factor.

*4)	Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.*

Other persons commonly engaged in a criminal enterprise with the defendant should be less likely to engage in the criminal conduct if the defendant is convicted and incarcerated. See State v. Boyd, 925 S.W.2d 237, 245 (Tenn. Crim. App. 1995) (upholding denial of probation, in part, on deterrence grounds when defendant was a leader in a criminal enterprise); see also United States v. Sessa, 821 F. Supp. 870, 875 (E.D.N.Y. 1993) (imposing life imprisonment in excess of federal sentencing guidelines based on deterrence because defendants were leaders of organized crime family). For deterrence purposes, this factor extends to those who are following the directions of another, as well as to those actually "leading" the criminal enterprise.

*5)	Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.*

Repeated occurrences of the same type of criminal conduct by a defendant generally warrant a more emphatic reminder that criminal actions carry consequences. Although the statute speaks in

-11-

terms of general deterrence, it has been recognized that general deterrence is possible only after specific deterrence has first been achieved. See State v. Jarbath, 555 A.2d 559, 564 (N.J. 1989) (stating that "the absence of any personal deterrent effect greatly undermines the efficacy of a sentence as a general deterrent. We have recognized recently that general deterrence unrelated to specific deterrence has relatively insignificant penal value."). This factor is also similar to the enhancement factor in section 40-35-114(1), and for deterrence purposes, other similar behavior not resulting in arrest may be taken into consideration. Cf. State v. Robinson, 971 S.W.2d 30, 46 (Tenn. Crim. App. 1997) ("There is no per se rule in Tennessee against considering unadjudicated conduct [in sentencing]. The trial court is merely prohibited from relying upon a mere arrest record to enhance a defendant's sentence.").

We recognize that any enumeration of factors in this nebulous area is imperfect, and we do not preclude proof of any other factors deemed relevant by the sentencing court. These factors are meant to serve only as a guide, and a court need not find that all of these factors are present before ordering incarceration based on a need to deter similar crimes. Additional factors may be considered by the sentencing court, provided that (1) the sentencing court states these additional factors on the record with specificity, and (2) the presence of these additional factors is supported by at least some proof.

## ANALYSIS OF DETERRENCE IN THE PRESENT CASE

In conducting our own *de novo* review of this record, we conclude that the trial court acted reasonably in ordering incarceration based solely upon deterrence grounds. From the evidence elicited at trial, it is clear that the appellee actively recruited others to transport illegal drugs into this state as a part of an organized criminal plan, and that drugs were brought into this state on at least two occasions from New Mexico under this same scheme. On at least one of these trips, the appellee financed the trip in part by paying $500 for the lodging and food expenses of the persons transporting his marijuana. Moreover, the appellee has repeatedly engaged in the sale of marijuana, as one witness admitted in a tape-recorded statement that he purchased marijuana from the appellee on at least three separate occasions and that he saw the appellee sell marijuana to others as well.

It is also clear that the appellee's motive in breaking the law was to profit or gain from his illegal conduct. This is certainly not a case where the appellee resorted to illegal conduct in order to feed his family or pay emergency expenses. Cf. State v. Barber, 595 S.W.2d 809, 810 (Tenn. 1980) (reversing denial of probation on deterrence grounds in part because defendant's motive for selling marijuana was "to pay his family's immediate living expenses" after being laid off from his job). To the contrary, the record indicates that the appellee admitted purchasing a truck with money from drug sales. We can divine no motive for the appellee's conduct other than greed or pecuniary gain, and we find that the trial court could rationally conclude that some deterrence may be obtained by the appellee's incarceration based on this factor.

We also find it significant that the Police Chief of McEwen testified that McEwen has a "rather serious [drug problem] for a small town." Chief Ethridge has served in the McEwen Police Department since 1984, and he stated that he was familiar with the drug problem in and around McEwen. Although the State could have admitted statistical evidence to reinforce the testimony of Chief Ethridge, it was certainly not required to do so given that Chief Ethridge is certainly one who is generally familiar with the drug problem in McEwen. Although Chief Ethridge did not believe that the drug problem was greater in Humphreys County than in any other part of Tennessee, a community should not be required to wait until a crime problem is generally worse than in any other part of the state before preventative action can be taken, so long as the problem is significant enough to justify a need for deterrence.

Finally, the trial judge also remarked that "there's a whole lot of other people in this county . . . that's wondering what's going to happen to Mr. Daryl Hooper." Although proof of publicity and notoriety is certainly relevant to the issue of deterrence—indeed, it may be one of the most significant factors—we see no proof of this fact in the record other than these statements. Although we will not automatically preclude a judge from taking judicial notice of some facts necessary to establish a need for deterrence, particularly in the area of publicity, this remark is really nothing more than the result of the court's extrajudicial observations, which should not be considered in sentencing. See Tenn. Code Ann. § 40-35-210(g) (1997) & Sentencing Commission Comments ("Implicitly within this subsection is that the judge may not consider matters other than those factors presented in open court."); see also Vaughn v. Shelby Williams of Tennessee, Inc., 813 S.W.2d 132, 133 (Tenn. 1991) ("No judge is at liberty to take into account personal knowledge which he possesses when deciding upon an issue submitted by the parties. In other words, '[i]t matters not what is known to the judge personally if it is not known to him in his official capacity.'"). Consequently, we do not consider these remarks in conducting our review.

Based on our *de novo* review of the record in this case, we hold that the evidence is sufficient to support the appellee's incarceration based solely upon deterrence grounds. The proof shows that there is a need to deter drug sale and possession, at least in McEwen; that the appellee intended to profit by his intentional and illegal conduct; that the appellee actively recruited, organized, and financed trafficking of drugs into this state; and that as a significant drug dealer, the appellee repeatedly engaged in this same illegal conduct. For these reasons, we reverse that part of the intermediate court's judgment which granted the appellee a probated sentence. We affirm, however, the holding of the Court of Criminal Appeals finding that the appellee's "sentence of four years is appropriate in this case." Therefore, we reinstate the appellee's original term of incarceration.

**CONCLUSION**

In summary, we hold that a trial judge may sentence a defendant to a term of incarceration based solely on a need for deterrence when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes. Based on our *de novo* review of this record, we conclude that the proof is sufficient to justify incarceration based solely on the need for deterrence. Accordingly,

-13-

we reverse the judgment of the Court of Criminal Appeals granting probation to the appellee, and we reinstate the appellee's original term of incarceration.

Costs of this appeal shall be paid by the appellee, Daryl Hooper, for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE