IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 30, 2008

**STATE OF TENNESSEE v. SCOTTY D. HATFIELD**[1]

**Appeal from the Criminal Court for Campbell County**
**No. 12931      E. Shayne Sexton, Judge**

_____

**No. E2007-01330-CCA-R3-CD - Filed May 1, 1008**

_____

The defendant, Scotty D. Hatfield, originally charged with three counts of aggravated assault and one count of felony reckless endangerment, was convicted of one count of attempted aggravated assault and misdemeanor reckless endangerment. The trial court imposed an effective sentence of three years to be served in the Department of Correction. In this appeal, the defendant contends that the sentence is excessive and that the trial court erred by denying alternative sentencing. We affirm the sentencing decision of the trial court. The case must be remanded, however, for the entry of a corrected judgment reflecting that the defendant was convicted of attempted aggravated assault rather than aggravated assault on Count 1.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Martha Yoakum, District Public Defender, and Charles Herman, Assistant District Public Defender, for the appellant, Scotty D. Hatfield.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William Paul Phillips, District Attorney General; and Scarlett Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The transcript of the defendant's trial was not included in the record on appeal. The following version of events was included in the affidavit of complaint and incorporated into the presentence report:

_____

[1]The defendant's name is spelled both "Scotty" and "Scottie" in the record. As is the custom of this court, we will use the spelling utilized in the indictment.

Affiant learned through an investigation through the victims[] that on 12-4-05 at approx[imately 3:15 p.m.], [the] above named defendant confronted them at Stanfield Church located on [highway] 297. Victims stated that the defendant got out of his vehicle and walked over to the vehicle they w[ere] in with a gun in his hand. Victims stated that the defendant opened the back door of their vehicle and pointed the handgun at Danny James Ditty[,] Jr. Victim[] Amy Renee Hatfield, wh[o] was driving the vehicle, stated that she drove out of the church parking lot, at which time the defendant shot at them with the handgun. Victims stated that [the] defendant followed them down the road ([highway] 297), pointing the handgun at them and shooting. Victims stated that the defendant then rammed their vehicle with his vehicle. Victims stated that they w[ere] in fear of their life and well being. Above offenses occurred in Campbell County, T[ennessee].

Neither the State nor the defendant offered testimony at the sentencing hearing. Instead, both relied upon the evidence adduced at trial and the contents of the presentence report. The presentence report established that the 31-year-old defendant had two prior convictions for driving under the influence as well as convictions for driving on a suspended license and disorderly conduct. In addition, charges of assault, criminal trespass, and failure to appear were pending in McCreary County, Kentucky, at the time of the sentencing hearing. The defendant admitted using marijuana daily, explaining that "it helps him stay calm and helps him eat." The defendant, who resided with his fourth wife at the time of the sentencing hearing, dropped out of high school in the tenth grade, had an unverifiable employment history, and stated that his only income was Social Security disability payments. The defendant provided the following version of the offenses:

My 11[-]year[-]old daughter informed me that she had been molested by her 17[-]year[-]old cousin, and without time to think I snapped and tried my very best to kill the boy. I later after I got out of jail found out that he had raped my [nine-]year[-]old son. And my 12[-]year[-]old daughter as well.

Without a trial transcript, we can only assume the defendant was referring to the attempted aggravated assault victim Danny Ditty, Jr.

In imposing sentences of three years for the attempted aggravated assault conviction and 11 months and 29 days for the reckless endangerment conviction, the trial court applied enhancement factors 1, that the defendant had a history of criminal convictions in addition to those necessary to establish the appropriate range, and 9, that the defendant employed a firearm during the commission of the offense. *See* T.C.A. § 40-35-114(1), (9) (2006). In mitigation, the trial court found that "the defendant acted under strong provocation." *See id.* § 40-35-113(2). The trial court refused to find in mitigation that the defendant committed the offenses under such unusual

circumstances that it was unlikely that the defendant's conduct was the result of a sustained intent to violate the law. The court remarked

> We have maybe not convictions, but we have accusations of violent behavior. In reading the victim impact statement, . . . there's some troubling parts about [the defendant's] failure to deal with anger issues, and . . . one can envision how this very thing occurs when someone is not dealing with anger issues. Had this been properly dealt with years back, we might not have been in a situation like this.

The trial court also denied alternative sentencing, ruling that "after consideration of our Sentencing Code, based on the defendant's past history, accusations and convictions; based on the need to properly deter this type of behavior," the sentence should be served in the Department of Correction.

In this appeal, the defendant mounts several challenges to the sentence imposed. He asserts that the trial court erred by utilizing enhancement factor 9 to enhance his conviction for attempted aggravated assault. He also claims that the trial court erred by considering in its entirety the statement of reckless endangerment victim Amy Renee Hatfield. Finally, he contends that the trial court erred by ordering a fully incarcerative sentence.

When a defendant challenges the length and manner of service of a sentence, this court generally conducts a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2006). This presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id*. If the review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the guilty plea and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant made in his behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210(b);-103(5) (2006); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

## I.  Length of Sentence

Although the defendant does not specifically contest the length of his sentence, he does assert that the trial court erred by using enhancement factor 9 to increase his sentence for attempted aggravated assault from the minimum sentence of two years to a mid-point sentence of three years.  The State concedes that the trial court erred by applying enhancement factor 9 to the conviction for attempted aggravated assault, but asserts that the three-year sentence is nevertheless appropriate.  We agree with the State.

Tennessee Code Annotated section 40-35-114 provides that "[i]f appropriate for the offense and if not already an essential element of the offense," the trial court may consider any one of 22 enumerated enhancement factors to increase a defendant's sentence beyond the statutory minimum.  T.C.A. § 40-35-114 (2006).  In this case, the defendant was convicted of the attempted aggravated assault of Danny Ditty, Jr., "by the use of a deadly weapon, to wit: a gun."  Because the use of a firearm was an essential element of the offense for which the defendant was convicted, the trial court erred by using enhancement factor 9 to increase the defendant's sentence. *See id.*  Because of this error, the trial court is not entitled to a presumption of correctness with regard to the length of the sentence.  Our review is purely de novo.

Upon our de novo review of the record, the defendant's record of criminal convictions is sufficient to warrant an enhancement of one year.  The record establishes that the defendant has two prior convictions for driving under the influence as well as convictions for driving on a suspended license and disorderly conduct.

## II.  Denial of Alternative Sentencing

The General Assembly has recognized that because of the limited capacities of state prisons, "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration."  T.C.A. § 40-35-102(5) (2006).  Accordingly, a defendant who does not fall within these parameters and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."  *Id.* § 40-35-102(6) (2006).[2]  An alternative sentence is any sentence that does not involve total confinement.  *See generally State v. Fields*, 40 S.W.3d 435 (Tenn. 2001).  Because, in

---

[2] The 2005 amendments to the Sentencing Act removed language providing that the described offenders were "presumed to be" favorable candidates for alternative sentencing in the absence of evidence to the contrary and replaced it with language providing that such offenders "should be considered" favorable candidates for alternative sentencing in the absence of evidence to the contrary.  *See* T.C.A. § 40-35-102(6) (2006).  The amendments also made this provision "advisory" in nature.  *Id.*  Because the defendant has failed to demonstrate that, even assuming that he was entitled to a presumption of favorable candidacy for alternative sentence, the trial court erred by ordering a fully incarcerative sentence, we need not address whether these amendments changed the burden of proof for entitlement to alternative sentencing.

this instance, the sentence imposed is ten years or less, the trial court was required to consider probation as a sentencing option. *See* T.C.A. § 40-35-303(a), (b). Sentencing issues are to be determined by the facts and circumstances made known in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

When examining a defendant's suitability for an alternative sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C). In addition, a defendant's potential for rehabilitation or lack thereof should be examined when determining if an alternative sentence is appropriate. *Id.* § 40-35-103(5).

The defendant is required to establish his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b); *State v. Bingham*, 910 S.W.2d 448, 455-56 (Tenn. Crim. App. 1995), *overruled in part on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956)), *overruled on other grounds by Hooper*, 29 S.W.3d at 9-10. Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

In this case, the trial court imposed a fully incarcerative sentence based upon its finding that Tennessee Code Annotated sections 40-35-103(1)(A) and (B) were applicable. The defendant contends that the trial court erred by utilizing the need for deterrence to support the denial of alternative sentencing because there was no proof in the record of the need for deterrence. We agree. Our supreme court has repeatedly held that "the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." *Hooper*, 29 S.W.3d at 9. Although the statute "does not require proof that incarceration 'will' or 'should' deter others from committing similar crimes," the record must demonstrate that "confinement [is] 'particularly suited' to provide a deterrent effect." *Id.* After concluding that "trial courts should be given considerable latitude in determining whether a need for

deterrence exists and whether incarceration appropriately addresses that need," the court ruled that a reviewing court

> will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Id.* at 10. Among the factors that a trial court should consider when determining whether incarceration is "particularly suited" to the need for deterrence are:

> 1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
> . . . .
> 2 ) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
> . . . .
> 3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
> . . . .
> 4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
> . . . .
> 5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

*Id.* at 10-12.

In this case, the trial court failed to consider any of the relevant factors, and the record does not contain any evidence that bespeaks either "a need to deter similar crimes" or a rational relationship between the incarceration of this defendant and the deterrence of similarly situated individuals likely to commit similar crimes. Thus, the trial court erred by denying alternative sentencing on the basis of the need for deterrence.

The defendant also contends that the trial court erred by relying on inadmissible portions of Ms. Hatfield's victim impact statement to support the denial of alternative sentencing.

Again, we must agree with the defendant. Tennessee Code Annotated section 40-38-203 defines a victim impact statement as

> a statement providing information about the financial, emotional, and physical effects of the crime on the victim and the victim's family, and specific information about the victim, the circumstances surrounding the crime, and the manner in which it was perpetrated.

T.C.A. § 40-38-203(2) (2006). In this case, the statement provided by Ms. Hatfield included not only the information deemed relevant by Code section 40-38-203 but also unsubstantiated allegations of the defendant's uncharged criminal activity. The record establishes that although the trial court stated that it did not find the statement "overly persuasive," it did rely upon the unsubstantiated allegations included in the statement to conclude that the defendant had "anger issues." The court then relied on the defendant's "failure to deal with anger issues" and the "defendant's past history, accusations and convictions," in its denial of alternative sentencing. The trial court's reliance on the unsubstantiated allegations contained in Ms. Hatfield's statement to deny alternative sentencing was error.

Because the trial court erred by relying on erroneous factors in its denial of alternative sentencing, our review of the manner of service of the sentence is also de novo, with no presumption of correctness. *See Ashby*, 823 S.W.2d at 169. Nevertheless, upon our de novo review of the sentencing decision of the trial court, we conclude that the defendant is not entitled to alternative sentencing. The record established that the defendant has a long history of criminal conduct and that confinement is necessary to avoid depreciating the seriousness of the offense. *See* T.C.A. § 40-35-103(1) (A)-(B).

As to the defendant's history of criminal conduct, at the time of the sentencing hearing, the 31-year-old defendant had four prior convictions spanning a period of eight years. In addition, the defendant admitted daily marijuana use.

The record also establishes the serious nature of the crimes in this case. Although the trial transcript was not included in the appellate record, the version of the offenses included in the presentence report, as well as the statements provided by Ms. Hatfield and the defendant, establish that the defendant, armed with a handgun, approached the victims as they sat in their car in a church parking lot. The defendant opened the car door and began firing shots in an attempt to kill victim Danny Ditty, Jr. When Ms. Hatfield fled, the defendant followed in his car, all the while firing his gun at the victims' vehicle. The defendant admitted that he was trying his "very best to kill the boy." Anything less than a fully incarcerative sentence would, in our view, depreciate the very serious nature of the defendant's conduct. *See State v. Thomas C. Russell*, No. E2006-00827-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, May 24, 2007) ("[A] sentencing court may consider a defendant's enjoyment of leniency in the selection of a particular conviction offense in awarding or rejecting alternative sentencing options."), *perm. app. denied* (Tenn. 2007) (citing *State v. Samuel*

*D. Braden*, No. 01C01-9610-CC-00457, slip op. at 15 (Tenn. Crim. App., Nashville, Feb. 18, 1998); *State v. Steven A. Bush*, No. 01C01-9605-CC-00220, slip op. at 9 (Tenn. Crim. App., Nashville, June 26, 1997); *State v. Frederick Dona Black*, No. 03C01-9404-CR-00139, slip op. at 3-4 (Tenn. Crim. App., Knoxville, Apr. 6, 1995)).

Regarding the defendant's potential for rehabilitation, his lack of a high school diploma or any verifiable employment history, lengthy criminal history, and complete lack of remorse demonstrate a poor potential for rehabilitation. Given the poor potential for rehabilitation and the satisfaction of the factors supporting an incarcerative sentence under Code section 40-35-103(1), the trial court did not err by denying an alternative sentence.

## CONCLUSION

Because the trial court committed errors of law when setting the length of sentence and when denying alternative sentencing, our review of both decisions is purely de novo with no presumption of correctness. Nevertheless, on de novo review of the record, we conclude that the defendant's previous criminal convictions support the three-year sentence imposed by the trial court. In addition, the record establishes that a fully incarcerative sentence is appropriate based upon the considerations in Tennessee Code Annotated section 40-35-103. Accordingly, the judgment of the trial court is affirmed. The case must be remanded, however, for the entry of a corrected judgment on Count 1. The judgment form must be amended to reflect that the defendant was convicted of attempted aggravated assault rather than aggravated assault.

_____
JAMES CURWOOD WITT, JR., JUDGE