# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 8, 2011 Session

## STATE OF TENNESSEE v. JEREMY MICHAEL HOLMES

### Appeal from the Criminal Court for Davidson County
### No. 2008-C-2678     J. Randall Wyatt, Jr., Judge

---

### No. M2010-00608-CCA-R3-CD - Filed May 24, 2011

---

The Defendant, Jeremy Michael Holmes, pled guilty as a career offender[1] to voluntary manslaughter, a Class C felony, with an agreed sentence of 6 years at 60 percent, leaving the manner of service to the discretion of the trial court. Following a sentencing hearing, the trial court denied alternative sentencing and ordered the Defendant to serve his sentence in confinement. In this appeal as of right, the Defendant contends that the trial court erred in denying all forms of alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

James O. Martin, III (on appeal), and Rich McGee and Lisa Naylor (at trial), Nashville, Tennessee, for the appellant, Jeremy Michael Holmes.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was initially indicted for second degree murder, a Class A felony. Following a mistrial, the Defendant agreed to plead guilty to voluntary manslaughter. At the guilty plea submission hearing, the State submitted that had the Defendant's case gone to

---

[1]Pursuant to the plea agreement, the Defendant pled as a career offender even though he was a Range I, standard offender.

trial a second time, the State would have proven that on May 16, 2008, the Defendant knowingly killed the victim, Adam Jared Dillegas. The victim was sitting in his vehicle in the parking lot of a bar at approximately 3:00 a.m when the Defendant, who was a security officer, approached the victim. The Defendant told the victim to leave the parking lot, but the victim refused to leave. The Defendant then told the victim to get out of his vehicle, but the victim again refused, this time using profanity. When the victim attempted to back out of the parking space, the Defendant stood behind the vehicle. The victim proceeded to back out of the parking space, ignoring the Defendant and tapping the Defendant with his vehicle. The Defendant was not harmed but was struck several times with the vehicle as the victim attempted to leave. The Defendant and the victim continued to argue through the driver's side window. After the victim cleared the parking space and was driving out of the parking lot, the Defendant fired his weapon, striking the victim in the neck. The victim lost control of the vehicle and ran into a telephone pole. The victim died as a result of the gunshot wound.

On March 5, 2010, the trial court held a sentencing hearing at which the victim's family and close friends testified about the victim and the effect that his death had on their lives. The Defendant's family and close friends testified about the effect that the victim's death had on the Defendant. The Defendant also exercised his right of allocution and expressed remorse for his actions.

Gayna Hughes and Carolyn Meeks testified concerning their encounters with the Defendant as a security officer. Ms. Hughes testified that in July 2007, she was cutting a hydrangea bush in front of her condominium complex when the Defendant confronted her. The Defendant told her to put the flowers down. Ms. Hughes complied, and the Defendant asked her for her driver's license. The Defendant refused to give her the license back after approximately five minutes and told her that he was considering whether he should arrest her for vandalism. The Defendant handcuffed her and patted her down before calling the police. When the police arrived, Ms. Hughes was released and given a citation.

Ms. Meeks testified that the Defendant confronted her husband, Mr. Meeks, on July 4, 2007. She stated that Mr. Meeks parked their vehicle on a street because they were going to watch the fireworks that night at a nearby location. The Defendant told Mr. Meeks that he was parked on private property and that he needed to move his vehicle. Mr. Meeks refused to move the vehicle, and the Defendant forcefully handcuffed him, hurting his arm. Ms. Meeks and bystanders called 9-1-1, and the Defendant eventually released Mr. Meeks before police arrived. The Defendant walked away, and Mr. Meeks pursued the Defendant, who pushed Mr. Meeks. As a result of the Defendant's actions, Mr. Meeks sought medical and psychological treatment and continued to struggle with depression.

At the conclusion of the hearing, the trial court sentenced the Defendant to serve 6 years at 60 percent in the Corrections Corporation of America facility. The trial court "put the six year sentence into effect" and told the Defendant that he could petition the court in two years for probation and that if he did not have any problems, he would be given probation. The trial court admitted that it had considered a sentence of split confinement but ultimately rejected such a sentence because the Defendant would only have to serve one year in confinement before he would be released.

In denying an alternative sentence, the trial court found that such a sentence would depreciate the seriousness of the offense and that a sentence of confinement would provide an effective deterrent "to other people in a similar position to commit a similar crime." In its written order, the trial court found that the circumstances of the offense were particularly shocking, reprehensible, offensive, and excessive, considering the Defendant's position as a security officer. Relative to the deterrent effect of the sentence, the court stated,

> The [c]ourt recognizes that security officers provide a valuable service to the community and enable private organizations to appropriately protect and govern their property. The [c]ourt also recognizes that security officers, from time to time, may be called upon to actively assist local police in the arrest and detention of serious offenders. While the [c]ourt does not wish to inhibit this authority in any way, it does have a responsibility to the people of the State of Tennessee through this Defendant to ensure that its citizens will be protected by security officers and not need to be protected from security officers.

## ANALYSIS

The Defendant contends that the trial court erred in denying all forms of alternative sentencing when he was presumed to be a favorable candidate for alternative sentencing. The Defendant urges this court to compare his case with the case of State v. James L. Partin, No. E2001-02254-CCA-R3-CD, 2002 WL 2029570 (Tenn. Crim. App. Sept. 5, 2002), where this court held that split confinement was warranted in a voluntary manslaughter case. The State responds that the Defendant has waived the issue for failing to cite to the record. The State further responds that defendants are no longer presumed to be favorable candidates for alternative sentencing and that the trial court properly denied alternative sentencing in order to deter the Defendant and in order to avoid depreciating the seriousness of the offense. The State asserts that the facts in this case are materially different from the facts in Partin because the Defendant purposefully shot the victim and had been involved in prior situations where he overstepped his authority.

-3-

The Defendant cited to the record and applicable authority in his brief in accordance with Tennessee Rule of Appellate Procedure 27(a)(7). Indeed, the Defendant cited to the record more than 30 times. Therefore, we decline to treat this issue as waived for failing to cite to the record and will consider the substance of the Defendant's sentencing issue.

The Defendant committed this offense on May 16, 2008; therefore, he was sentenced under the 2005 revisions to the Criminal Sentencing Act. The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a), (b). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(a). However, the Defendant must have established his suitability for probation. Tenn. Code Ann. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Contrary to the Defendant's assertion, he was not presumed to be a favorable candidate for alternative sentencing under the revisions to the Sentencing Act. Tenn. Code Ann. § 40-35-102(6). Because he was convicted of a Class C felony, he would only have been "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, this consideration was dependent upon the Defendant's status as an especially mitigated or standard offender. Tenn. Code Ann. § 40-35-102(6). Here, the Defendant pled guilty as a career offender.

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). The trial court shall also consider the mitigating and enhancing factors as set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Defendant's case is materially different from Partin. 2002 WL 2029570, at *8-9. In Partin, the defendant was presumed to be a favorable candidate for alternative sentencing. Id. As previously discussed, this presumption is no longer available to defendants, including the Defendant in this case. Additionally, none of the factors favoring confinement applied to the defendant in Partin. Id. at *8. Here, the trial court based its denial of alternative sentencing on two grounds – the need to deter others from committing similar crimes and the need to avoid depreciating the seriousness of the offense. The denial of alternative sentencing would have been amply supported on the sole ground that confinement was necessary in order to avoid depreciating the seriousness of the offense when the circumstances of the offense were "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" and when "the nature of the offense, as committed, outweighed all other factors" favorable to probation. See State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981). Indeed, the Defendant, acting in his capacity as a security officer, shot the unarmed victim, who was attempting to get away from the Defendant and posed no further threat to the Defendant or others. The circumstances of this offense, combined with the Defendant's mistreatment of Ms. Hughes and Mr. Meeks while also acting in his official capacity as a security officer, reflect poorly on his amenability to rehabilitation. Accordingly, we conclude that the trial court did not err in denying all forms of alternative sentencing.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE