STATE of Tennessee, Appellee,

v.

Brenda BRYANT, Appellant.

Court of Criminal Appeals of Tennessee,
at Knoxville.

Dec. 30, 1988.

Permission to Appeal Denied by
Supreme Court April 3, 1989.

John S. Anderson, Rogersville, for appellant/defendant.

W.J. Michael Cody, Atty. Gen. and Reporter, James W. Milam, Asst. Atty. Gen., Nashville, Doug Godbee, Asst. Dist. Atty. Gen., Rogersville, for the State.

## OPINION

WADE, Judge.

The defendant appeals as of right her convictions of forgery of a certificate of title and grand larceny. She received concurrent sentences of one and three years respectively as a Range I standard offender with a 30% release eligibility date.

The defendant presents the following issues on appeal:

1. Whether the trial court erred in overruling the defendant's motion for judgment of acquittal.

2. Whether the evidence was sufficient to support the jury verdict finding the de-

fendant guilty of forgery and grand larceny.

3. Whether the trial court erred in ordering that the stolen vehicle be returned to Dana Gregory.

4. Whether the trial court erred in its denial of the defendant's request for probation and a suspended sentence.

The judgment of the trial court is affirmed as to the conviction; reversed as to the order transferring possession of the property; and remanded as to sentencing.

Dana Gregory, a victim of the offenses, testified that the defendant contacted him in early April of 1986 about the purchase of a 1979 CJ–7 Jeep. On April 7 of that year, Gregory related that he gave an envelope to the defendant containing 35 one hundred dollar bills in exchange for a certificate of title signed by the defendant as "Cupid D. Bryant."[1] Louise Gilliam, a notary public, acknowledged the signature. The stated consideration on the certificate of title was $100.00.

Gregory maintained possession of the jeep until June 15, 1986, when he discovered it missing from the driveway of his house. He immediately reported the jeep as stolen and offered a $500.00 reward for information leading to its recovery.

Several months later, Gregory received a telephone call providing information about the jeep's location. Afterwards, he went to the defendant's residence and saw the vehicle parked in her yard. On January 23, 1987, Gregory contacted the Tennessee Bureau of Investigation, provided them with the certificate of title signed by the defendant, and asked for assistance in the return of the vehicle.

The notary public, an employee of Ally Motor Company in Churchill, Tennessee, identified her signature and notary seal on the car title issued to "Cupid D. Bryant." Although she was unable to identify the defendant, she recalled that a female accompanied Gregory to her place of business on April 7, 1986, and signed the title in her presence.

Avis Gregory, mother of the victim, testified that she borrowed $2,000.00 in April of 1986 for the purpose of purchasing the jeep. She saw the defendant deliver the vehicle to her son in exchange for the total amount of $3,500.00 she had provided to her son. She testified that she observed her son leave with the defendant. Upon his return, Dana Gregory gave the certificate of title to his mother.

A special agent with the FBI, qualified as an expert in handwriting comparison analysis, testified that the handwriting exemplars provided to authorities by the defendant were identical to the signature on the certificate of title.

The defendant was questioned by TBI Agent Robert Denny at the residence of her mother. Although Agent Denny recalled that the defendant and her mother, in their initial interview, told him that the certificate of title was kept in a safe located in the residence, they learned, after a search, that it was missing and suggested that someone must have broken into the safe and stolen it. During this portion of the investigation, the defendant inexplicably went outside and removed the tags from the jeep.

The defendant testified that she had left the jeep with Dana Gregory who had agreed to paint the vehicle and make other repairs for $200. She denied executing the certificate of title either in her name or that of her mother, Cupid D. Bryant. While the defendant admitted that she did go to the Gregory residence in the company of Lisa Cradic at about 11:00 P.M. on June 15, 1986, she did so only to reacquire possession of the jeep that Gregory had failed to paint or repair.

She admitted in a pre-trial statement that before taking the vehicle, she had heard that the victim intended to keep her jeep and related that the jeep remained at her mother's residence until the time of trial. The defendant testified that she slept late on April 7, 1986, had a doctor's appointment at 11:15 A.M., returned to her residence by noon to get ready for work, and from 2:00 P.M. until 9:45 P.M. assumed her

---

1. The title of the car is in the name of Cupid D. Bryant, the defendant's mother.

responsibilities as assistant manager of the County Mill Kingsport Mall. The defendant referred to the vehicle throughout the trial as "my jeep" although its title was in the name of her mother. She had no idea how Gregory acquired the document of ownership.

Cupid D. Bryant, mother of the defendant, testified that she had never signed the car title or authorized anyone else to execute it on her behalf. In fact, she could not recall whether she ever received it. She testified that the loan had been paid in full at the United American Bank and, perhaps because of the confusion surrounding its collapse, the bank most likely never provided her with the title. Mrs. Bryant confirmed that her daughter had permission to drive the jeep whenever she wanted to.

Although Gregory admitted to having known the defendant for sometime prior to the transaction, he denied that he had ever agreed to paint the jeep for her and related that the jeep had a value of $4,500.00 on the date it was stolen. The victim produced a receipt dated May 15, 1986, indicating an expenditure of $840.46 for repairs to the jeep. The victim admitted that he had not recorded the title or obtained a new title to the jeep in his own name. Gregory said that he had never known the defendant to go by the name, Cupid D. Bryant, at anytime prior to the transaction but denied knowing her first or middle name.

Upon the return of the jury verdict, the trial court, although it never asked the jury to determine the amount of the victim's loss, ordered the jeep to be returned to the possession of Dana Gregory.

I

The trial court overruled the defendant's motion for a judgment of acquittal at the conclusion of the state's evidence. The defendant submits that if there is a victim to the forgery, that it is Cupid D. Bryant rather than Dana Gregory and that that argument is supported by the fact that the court felt it necessary to award the vehicle to Gregory at the conclusion of the trial.

As to the offense of grand larceny, the defendant contends that in order for her to have been found guilty, it must have been established beyond a reasonable doubt that the vehicle did in fact belong to Gregory; that is, an essential element of the crime is that the defendant must intend to permanently deprive the true owner thereof. Because the victim Gregory knew the defendant was not "Cupid D. Bryant," he could not be a bonafide purchaser for value.

In this instance, of course, the defendant elected to present evidence on her own behalf. Any error resulting from a failure to sustain the defendant's motion for judgment of acquittal is waived when the defendant elects to submit further testimony. *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn.1979).

This issue has no merit.

II

The defendant uses the same rationale as in the first assignment of error as the basis for her argument that the evidence was insufficient to support the verdict of the jury.

When the sufficiency of the evidence is challenged, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983); Rule 13(e), Tenn.R.App.P.

The state is entitled not only to the strongest legitimate view of the evidence but to all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978). The evidence is sufficient when a rational trier of fact could conclude that the defendant is guilty. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Tenn.Code Ann. § 39–3–1101 defines larceny as "the felonious taking and carrying away the personal goods of another."

Forgery is defined by Tenn.Code Ann. § 55–5–116:

**Altering, falsifying or forging evidences of title, assignments or plates a felony.** —It is a felony punishable as hereinafter provided for any person to commit any of the following acts:

(1) To alter with fraudulent intent any certificate of title, certificate of registration, registration plate, or permit issued by the division or any county clerk of this state by virtue of the provisions of chapters 1–6 of this title;

(2) To alter or falsify with fraudulent intent or forge any assignment upon a certificate of title;

(3) To hold or use any such document or plate, knowing the same to have been altered, forged, or falsified.

The defendant presents an interesting academic question on each count: Who is the actual victim? It was the state's theory that Gregory was the victim of both the grand larceny and the forged assignment upon the certificate of title.

The essential facts of this prosecution, evident by the verdict of the jury, are that the defendant forged the signature of her mother to a certificate of title and induced her victim, Gregory, to provide her with a substantial amount of cash. For a period of time, Gregory enjoyed the possession and control of the vehicle and established that he had made repairs of over $800.00. The defendant then took the vehicle from Gregory under rather suspicious circumstances and with the obvious intent to deprive him of any benefits of ownership, legal or equitable.

The acts were separate and distinct. They victimized Dana Gregory and perhaps, although not necessarily at issue here, her mother, Cupid D. Bryant. The determination of the technical, legal issue of ownership was not a necessary function of the jury in this proceeding. *See State v. Cole,* 645 S.W.2d 417 (Tenn.Crim.App. 1982); *Jones v. State,* 533 S.W.2d 326 (Tenn.Crim.App.1975); *Fiedler v. State,* 479 S.W.2d 814 (Tenn.Crim.App.1972).

There were facts and circumstances upon which the jury could rationally determine that Gregory took no part in the scheme and was victimized entirely by the acts of the defendant, both by the forgery and by the larceny. As is its prerogative, it accepted the version of the state and rejected that of the defendant.

There is no merit to this issue.

### III

■ The defendant argues that the trial court committed error when it ordered the vehicle returned to Gregory on the theory that it deprived the true owner, Cupid D. Bryant, of her property. The defendant contends, among other things, that Gregory was not an innocent purchaser and, in any event, would have acquired no rights of ownership by virtue of the forged transfer. The defendant submits that Gregory was aware or should have been aware that the defendant had no authority to execute the title.

The trial court based its order upon Tenn.Code Ann. § 40–20–116:

**Order of restitution.**—(a) *Whenever a felon is convicted of stealing* or feloniously taking or receiving property, or defrauding another thereof, *the jury shall ascertain the value of such property,* if not previously restored to the owner, *and the court shall, thereupon, order the restitution of the property,* and, in case this cannot be done, that the party aggrieved recover the value assessed against the prisoner, for which execution may issue as in other cases.

(b) If the property has been feloniously destroyed, the jury shall ascertain the damages sustained, upon which judgment shall be rendered in favor of the party aggrieved against the defendant, and execution shall issue as before provided.

(c) The provisions of this section are cumulative, and do not deprive the party injured of any right he may have for the recovery of his property or its value. (emphasis added.)

The mandatory language of this statute distinguishes the particular functions of the judge and the jury; it implicitly authorizes the trial court to "order the restitution of the property" or allow to the victim

a recovery of its value only when the jury has first ascertained its value. Although the jury heard sufficient evidence to make a rational determination, the trial court never specifically instructed it to decide the damages. *See* 8 Mem.St.U.L.Rev. 319; *Burton v. State*, 214 Tenn. 9, 377 S.W.2d 900 (1964).

The issue in the trial court was never to actually determine the "true and lawful owner" of the 1979 CJ-7 Jeep. The function of the trial court and its jury was to determine whether the defendant was guilty of forgery and grand larceny. While it is apparent from a review of this record that the court and jury deemed Dana Gregory to be the primary victim of these offenses, it does not necessarily follow that the trial court, under these circumstances, had the authority to order the transfer of either title or possession.

It was not the function of the trial court and neither is it the function of this court to determine any potential civil dispute regarding the certificate of title. That matter is reserved for a different court on a different day.

The order awarding possession of the vehicle to Dana Gregory is set aside; this court does not endeavor to determine the individuals lawfully entitled to possession.

## IV

The defendant contends that she was erroneously denied probation. When one convicted of a felony challenges the length, range or manner of the service of her sentence, it is the duty of this court to conduct a *de novo* review of the sentence without a presumption of correctness. Tenn.Code Ann. § 40–35–402(d); *State v. Moss*, 727 S.W.2d 229, 238–239 (Tenn.1986); *State v. Smith*, 735 S.W.2d 859, 863 (Tenn.Crim. App.1987).

■ The burden of proof is on the defendant to show that she is entitled to probation. *Frazier v. State*, 556 S.W.2d 239, 241 (Tenn.Crim.App.1977). Among the factors to be considered are (1) the nature and circumstances of the offense; (2) the defendant's criminal record, social history, and present condition; and (3) the deterrent effect upon and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn.1978).

The defendant, age 26, is a high school graduate with an associate degree in business. The pre-sentence report indicates that she was on the dean's list in the summer of 1983 and has held gainful, continuous employment since May of 1982. At the time of sentencing, the defendant was a senior assistant manager at a business in the Kingsport Mall receiving a net, weekly salary of approximately $170.00, which included overtime.

The report indicated that the defendant had no history of drug or alcohol abuse. Her father is deceased and her brother is in the military stationed in Germany. She resides with her mother, a housewife, in Kingsport.

The defendant, with a background of good physical and mental health, has no prior criminal record. Among several listed credit card indebtednesses, the defendant acknowledges a student loan balance of approximately $6,000. The pre-sentence report provides, in summary, as follows:

This defendant was very cooperative during my interview and it is this probation officer's opinion that she would make a good candidate for probation.

■ The trial court denied probation because of the large amount involved in the theft, its deterrent effect upon the larceny of automobiles (noted by the trial judge as the number one crime in the Third Judicial District), the lack of remorse on the part of the defendant, and her false testimony.

A defendant may be considered eligible for probation where the actual sentence is ten years or less. Although the circumstances of this offense are serious, they are not so violent, shocking, or reprehensible to altogether disqualify the defendant from consideration for probation.

The defendant's lack of prior criminal record, her good social history, and present general condition, are all factors which would weigh in favor of the grant of probation. Although deterrence is certainly an

important aspect in the final determination of whether to grant probation, this record does not require that any unusual emphasis be placed upon this factor. Automobile related offenses, although serious in nature, are not peculiar to any particular jurisdiction. The legislative declaration envisions "an examination of the deterrence factor in the context of each case and assigning it such weight, credit and value as the circumstances warrant." *State v. Michael,* 629 S.W.2d 13, 15 (Tenn.1982).

It is, however, significant that the trial court placed emphasis upon the defendant's untruthfulness in its denial of probation. Any lack of candor on the part of the defendant is an important factor in the overall consideration of the issue of probation. *State v. Bunch,* 646 S.W.2d 158 (Tenn.1983); *State v. Ford,* 643 S.W.2d 913 (Tenn.Crim.App.1982).

Upon a *de novo* review of each of the appropriate factors relative to probation or suspended sentence, it is this court's considered opinion that the defendant shall serve a sentence of split confinement. The defendant shall be granted probation for her effective sentence of three years after a period of fifteen (15) days, 100% actual confinement.

This cause is remanded to the trial court for the imposition of probationary rules, regulations, and conditions, as authorized by Tenn.Code Ann. § 40–35–303, which shall include, but not be limited to, the following:

1. A devotion to specific employment or occupation.

2. Performance without compensation of services in the community for charitable or governmental agencies for a period of time not less than 80 hours.

3. Submission to supervision to the Department of Correction, Division of Adult Probation, not to exceed three years.

4. The transfer of the legal ownership of the 1979 CJ–7 Jeep, or in substitution thereof, the payment of restitution to the victim, Dana Gregory.

The cause is remanded to the trial court which shall impose a sentence in accordance with this opinion.

DAUGHTREY and BIRCH, JJ., concur.