IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2002

## STATE OF TENNESSEE v. CARLOS BIERNER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-12530     D. Kelly Thomas, Judge**

**No. E2001-01857-CCA-R3-CD**
**September 13, 2002**

Defendant, Carlos Bierner, was charged with aggravated sexual battery. After his trial had commenced, but prior to its conclusion, Defendant entered a plea of guilty to the lesser charge of attempted aggravated sexual battery, a Class C felony. In accordance with the negotiated plea agreement, Defendant received a sentence of eight years, as a multiple Range II offender, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court denied probation or any other form of alternative sentencing and ordered that Defendant serve the eight years in confinement, at thirty-five percent eligibility. In this appeal, Defendant argues that the trial court erred by ordering a sentence of continuous confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Mack Garner, District Public Defender, Maryville, Tennessee for the appellant, Carlos Bierner.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Michael L. Flynn, District Attorney General; and William R. Reed, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The twelve-year-old victim in this case, E.F., lived with her mother, step-father, and two younger brothers during the week and spent the weekends with her father, Corey Foster. (The minor victim shall be referred to herein by her initials.) On December 23, 1999, during a visit with their father for the holidays, E.F. and her eight-year-old brother, Grant, spent the night at the home of his girlfriend, Nikki Huffine. Foster, Huffine, and her brother, the Defendant, were planning to attend

a Christmas party that evening at the End Zone Bar and Lounge. E.F., as the oldest child, was to babysit her brother along with Huffine's two daughters, who were five and six years old. E.F. testified at trial that, prior to this night, she had met Defendant only a couple of times.

The three adults departed for the party at approximately 9:00 p.m. and returned home early the next morning, at 2:30 a.m. Corey Foster testified that during the course of the evening, he, Huffine, and Defendant had consumed approximately ten beers each. Foster claimed that, although he could feel the effects of the alcohol, he was not disoriented and had not suffered any lapse of memory regarding the events of that evening. According to Foster, the three of them were able to converse, walk, and function in their normal capacity when they returned home. E.F. and her brother were asleep on the couch at that time; Huffine's two daughters were in their bedroom. Foster and Huffine went into the kitchen and talked for a short while. Defendant sat on the couch with E.F. and her brother. Foster came out of the kitchen, awakened Grant, and sent him to sleep in the spare bed. He instructed E.F. to find some blankets and sleep on the floor in the girls' room. Defendant, who was still sitting on the end of the couch with E.F., responded, "No, she'll be all right right [sic] here." So Foster covered E.F. with a blanket, and then he and Huffine went to bed.

E.F. testified that her foot was sticking out from underneath the blanket, and Defendant began to rub it once her father left the room. In response, E.F. sat up and Defendant kissed her on the cheek. E.F. laid back down. Within a few minutes, his hands moved up her leg to her inner thigh. E.F. was wearing jeans and a T-shirt at the time. Defendant whispered, "Shhh," and then unbuttoned and unzipped E.F.'s pants. E.F. testified that Defendant touched her "private part," but his hands stayed outside of her underwear. At that point, E.F. moved to the far end of the couch, and then left the room to find her father. Foster was in Huffine's bedroom. When she told him what happened, he called the police.

Foster testified that when he opened the bedroom door, tears were streaming down E.F.'s face and she appeared afraid. Foster wanted to confront Defendant, but Huffine pulled him back into the bedroom and said, "I'll go deal with this." She yelled at Defendant, "Carlos, what are you doing?" He responded, "I'm sorry." Foster promptly called E.F.'s mother and the Blount County Sheriff's Department. The police arrived a short time later and arrested Defendant.

Defendant was charged with aggravated sexual battery. On the morning of the second day of trial, he pled guilty to the lesser offense of attempted aggravated sexual battery. In accordance with the plea agreement, Defendant was sentenced to eight years, with the manner of service to be determined by the trial court.

At the sentencing hearing, Defendant testified that he was twenty-five-years old. In 1994, after graduating from high school, he enlisted in the United States Army. In 1995, Defendant was arrested and convicted of four felonies in the United States Army Court: three counts of distribution of marijuana and one count of "illegal distribution of other dangerous drug (steroids)." Defendant was sentenced to thirteen months in confinement and forfeited some pay. Thereafter, he also received a "bad conduct" discharge. Defendant claimed that he was convicted of simple possession

of marijuana in Jefferson County in 2000, for which he received a sentence of 11 months, 29 days probation. (Defendant admitted during the sentencing hearing that he was convicted for this offense; the conviction appears in the presentence report as a statement by Defendant under "comments," rather than with the other convictions.) He claimed that he was in jail in Jefferson County when the indictment was returned on the present charge, and he has not been charged with any offenses in the time hence. Defendant stated that he has been employed continuously since his discharge from the Army.

Defendant testified that he has had major problems with drugs and alcohol during his lifetime. He began drinking alcohol at age six, and started smoking marijuana when he was fifteen years old. He claimed that, in the beginning, he only smoked marijuana socially. His usage increased over time and, approximately one year prior to sentencing, he was using the drug regularly. At the time of this offense, Defendant was consuming one case of beer per week and smoking marijuana daily. However, he testified that he had since stopped drinking and smoking marijuana to ensure that "this sort of thing doesn't happen anymore."

As for the events which lead to his commission of the offense, Defendant testified that he had been out drinking with his sister, Huffine, and her boyfriend, Foster, earlier that evening. According to Defendant, he was "pretty well drunk" when they came home, having consumed twelve to fourteen beers during six to seven hours. He recalled seeing E.F. and her brother lying on the couch when they entered his sister's home. He admitted that he had met E.F. prior to the night he committed this offense, and that he was "pretty sure" that she was under the age of thirteen. After E.F.'s brother was sent to bed, he and E.F. were alone. Defendant sat down on the opposite end of the couch from E.F. and "proceeded to fall asleep." But before he did so, he reached over and unbuttoned E.F.'s pants. E.F. then got up off the couch and knocked on Huffine's bedroom door. Defendant testified that he did not recall what happened afterward. He stated that if E.F. had not moved from the couch, he would have stopped and nothing else would have happened.

During cross-examination, Defendant testified that, in his opinion, this case had been "sensationalized or carried a little too far." He stated that he believed unbuttoning her pants was "wrong," but "that was the extent of the matter." He believed that Foster was somehow behind the charges against him "because he wants my sister but she don't want him and I got caught in the middle of it." Defendant denied having any type of sexual problem. However, he stated that he was willing to submit to treatment or counseling for sexual behavior and drug treatment if ordered to do so as part of his sentence.

With regard to the crime charged, Defendant denied kissing E.F. on the cheek and that he had urged her to remain quiet. When questioned as to why he unbuttoned E.F.'s jeans, he stated "I'm really not sure." He testified that his "only goal" was to unbutton her pants; he would not have gone any further with "inappropriate touching." Defendant admitted that he was fully awake when the incident occurred. However, he blamed alcohol for his conduct.

-3-

Defendant acknowledged that he had a four-year-old daughter and that the mother of his child was fifteen years old when she gave birth. When asked whether he wondered what had attracted him to a fifteen-year-old girl, he replied, "I've wondered about it. But I really haven't thought about it, so I couldn't answer your question." He denied having an unnatural attraction to young girls or that this might be something he should "look into."

Defendant testified that he had not used marijuana during the six or seven months prior to the date of the sentencing hearing (July 31, 2001). The State pointed out that this claim contradicted his statements to the probation officer during the presentence interview on May 10, 2001 (that he had used drugs in the six weeks prior to the interview). The State also asked Defendant whether he had continued to use drugs on a daily basis, even after he was indicted on the present charge. Defendant answered affirmatively, but stated that he had not had any alcohol for approximately one year. He claimed that his decision to abstain had nothing to do with the instant crime, however; he simply believed that it was "time to stop" because he was young. He said that the continued use of alcohol would take "its toll" on his body, and he "[did not] want to deal with that."

Neither the victim nor her family testified at the sentencing hearing. At the conclusion of the proceeding, the trial court found that Defendant was not a favorable candidate for probation or alternative sentencing. Accordingly, the trial court ordered that Defendant serve his sentence in confinement based upon the following: (1) Defendant's criminal history was significant, (2) Defendant's potential for rehabilitation was low, as evinced by the fact that he refused to accept responsibility for his actions, and (3) Defendant's testimony was untruthful and lacked candor. Consequently, the trial court sentenced Defendant to serve his eight year sentence in confinement.

## ANALYSIS

The sole issue in this appeal is whether the trial court erred by ordering Defendant to serve his entire sentence in the Department of Correction. Defendant contends that he should have received probation or some other type of alternative sentence, i.e., supervision in a community corrections program. The State responds that the record adequately supports the trial court's denial of any form of alternative sentencing. We agree with the State.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review of the record with a presumption that the determinations made by the sentencing court are correct. See Tenn. Code Ann. §§ 40-35-401(d), 40-35-402(d) (1997). If our review "reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). On the other hand, if the trial court failed to comply with the statutory guidelines, our review is de novo without a presumption of correctness. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). Having concluded that the trial court considered the sentencing principles and all relevant

facts and circumstances in this case, our review of Defendant's sentencing determination is <u>de novo</u> with a presumption of correctness.

On appeal, the defendant has the burden of establishing that the sentence is improper. <u>See</u> Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In determining whether the defendant has carried this burden, this Court must consider: (a) the evidence adduced at trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel; (e) the nature and characteristics of the offense; and (f) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997).

Because Defendant agreed to be sentenced as a standard Range II offender convicted of a Class C felony, he is not entitled to the statutory presumption in favor of alternative sentencing. <u>See</u> Tenn. Code Ann. § 40-35-102(6) (1997). We are mindful, however, that the determination of whether Defendant is entitled to an alternative sentence and whether he is entitled to probation are different inquiries. <u>See</u> <u>State v. Boggs</u>, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). If Defendant had been entitled to the statutory presumption favoring alternative sentencing, the State would have the burden of overcoming the presumption with evidence to the contrary. <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991); <u>State v. Bingham</u>, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), <u>overruled on other grounds</u> (<u>State v. Hooper</u>, 29 S.W.3d 1 (Tenn. 2001)); <u>see</u> Tenn. Code Ann. § 40-35-102(6), -103 (1997). With regard to probation, Defendant bears the burden of establishing suitability, even if he had been entitled to the statutory presumption of alternative sentencing. <u>Bingham</u>, 910 S.W.2d at 455; <u>see</u> Tenn. Code Ann. § 40-35-303(b) (1997). Therefore, we shall address the issues concerning probation and alternative sentencing separately.

## I. Probation

To meet the burden of establishing suitability for full probation, a defendant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." <u>Bingham</u>, 910 S.W.2d at 456 (quoting <u>State v. Dykes</u>, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)). The following criteria, while not controlling the discretion of the sentencing court, shall be accorded weight when deciding the defendant's suitability for probation: (1) the nature and circumstances of the criminal conduct involved, Tenn. Code Ann. § 40-35-210(b)(4); (2) the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation the defendant will commit another crime, <u>see</u> Tenn. Code Ann. § 40-35-103(5); (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes, Tenn. Code Ann. § 40-35-103(1)(B). <u>Id.</u>

A defendant is eligible for full probation where the sentence received by the defendant is eight years or less, subject to some statutory exclusions not relevant here. <u>See</u> Tenn. Code Ann. § 40-35-303(a). Although full probation must be automatically considered by the trial court as a sentencing alternative whenever the defendant is eligible, "the defendant is not automatically entitled

to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). Rather, a defendant seeking full probation bears the burden of showing that the sentence imposed is improper and that probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). Generally, this Court will not set aside findings of fact made by the trial court after an evidentiary hearing unless the evidence contained in the record preponderates against the trial court's findings. State v. Dick, 872 S.W.2d 938, 943 (Tenn. Crim. App. 1993); State v. Young, 866 S.W.2d 194, 197 (Tenn. Crim. App. 1992). This deference applies to a trial court's findings of fact in the context of sentencing hearings. See State v. Raines, 882 S.W.2d 376, 383 (Tenn. Crim. App. 1994).

As a preliminary matter, we observe that Defendant is eligible for probation based on the fact that his agreed-upon sentence is eight years or less. See Tenn. Code Ann. § 40-35-303(a) (1997). The record reflects that, prior to sentencing Defendant, the trial court considered the evidence presented during the trial (which was incorporated by reference at the State's request) and the sentencing hearing, in addition to the presentence report and relevant sentencing factors. Thereafter, the trial court concluded that Defendant should serve his sentence in confinement based on its findings that: (1) Defendant's criminal history is significant, (2) Defendant's potential for rehabilitation is poor, and (3) Defendant's testimony was untruthful and lacked candor.

We concur with the trial court's determination that Defendant displayed a lack of potential for rehabilitation. The record reflects that, rather than accept responsibility for his actions, Defendant blamed alcohol for his criminal conduct. Neither did he appear remorseful or repentant to any degree. According to his testimony at the sentencing hearing, Defendant maintained that this case had been "sensationalized or carried a little too far." He admitted at one point that unbuttoning E.F.'s pants was "wrong," but his next statement, that this "was the extent of the matter" clearly suggests that he considered the charges trivial and/or unimportant. In spite of the present charge against him and the fact that he caused a fifteen-year-old girl to become pregnant, it is also apparent that Defendant does not believe that he has any type of sexual problem. "Defendant's Version" of the present matter is contained in the following excerpt from the presentence report:

> I was charged with aggravated sexual battery which I believe I was over charged. I pleaded guilty to attempted sexual battery through my own conscience & advice from my lawyer because it was probationary. *I don't believe I did anything wrong to be charged with such an offense.* It may sound strange, but I believe her father is pushing this so hard because he wants my sister but she don't want him and I got caught in the middle of it.

(Emphasis added.) Clearly, although Defendant admitted once that what he did was wrong, it seems he is not entirely convinced of this fact. It also appears that he considers *himself* to be a victim. He stated that Foster was somehow behind the charges against him for reasons unrelated to him and that he merely "got caught in the middle of it." In light of the above, we find Defendant's potential for rehabilitation to be quite poor. Because he generally denies responsibility for his conduct or that he

committed any wrongdoing, we also conclude that the risk that Defendant may commit another crime during a period of probation is unacceptably high. See Tenn. Code Ann. § 40-35-103(5).

In addition, we agree that Defendant's testimony was untruthful and that he displayed a disturbing lack of candor with regard to the crime. A defendant's lack of candor, credibility, and willingness to accept responsibility for his crime are relevant considerations in determining a defendant's potential for rehabilitation, and its lack thereof is a proper consideration in determining whether probation or confinement is appropriate. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994); State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992); State v. Bryant, 775 S.W.2d 1, 6 (Tenn. Crim. App. 1988) ("Any lack of candor on the part of the defendant is an important factor in the overall consideration of the issue of probation."). As noted in the facts, Defendant testified that he had not used marijuana during the six or seven months prior to the date of the sentencing hearing (July 31, 2001), which contradicted his admission to the probation officer on May 10, 2001, that he had used drugs in the six weeks prior to that day. The record further reflects that, when asked why Defendant unbuttoned the victim's pants, he replied, "I don't know." Finding Defendant's statement not credible, the trial court remarked, "There [wa]s but one reason to unbutton that young lady's pants, and that's a sexual motive." Based on the above, we find that Defendant's lack of candor provided an additional basis for denying probation. See State v. Dykes, 803 S.W.2d 250, 259-60 (Tenn. Crim. App.1990), overruled on other grounds (State v. Hooper, 29 S.W.3d 1 (Tenn. 2001)).

In sum, we find that Defendant's inability to accept responsibility for his criminal conduct, his lack of remorse, and his failure to accept that what he did was wrong demonstrate that his potential for rehabilitation is poor. We also agree that Defendant's testimony revealed a lack of candor and truthfulness. Accordingly, Defendant has failed to show that the trial court's denial of probation was improper or that probation will be in the best interest of the defendant and the public.

## II. Alternative Sentencing Other Than Probation

Defendant also argues that the trial court erred by not ordering that he serve his sentence in a community corrections program or granting him some other type of alternative sentence.

As previously noted, a Range II standard offender convicted of a Class C felony, Defendant is not presumed a favorable candidate for alternative sentencing options. Tenn. Code Ann. § 40-35-102(6) (1997). Nevertheless, the trial court must consider the following factors when ordering confinement: (1) "[c]onfinement is necessary to protect society by restraining the defendant who has a long history of criminal conduct," (2) "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or (3) "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Id. § 40-35-103(1)(A)-(C); see Ashby, 823 S.W.2d at 169. As with probation, the court may additionally consider a defendant's potential for rehabilitation or lack thereof. Tenn. Code Ann. § 40-35-103(5).

The record reflects that the trial court denied alternative sentencing based, in part, upon its finding that Defendant's criminal history is "significant." The evidence of Defendant's criminal history was submitted via the presentence report and his testimony during the sentencing hearing. The presentence report revealed that Defendant has four felony convictions for distributing drugs during his service in the Army in 1995, and that he reported one misdemeanor conviction for possession of marijuana sometime in 2000. We note that the presentence report was introduced into evidence without objection by Defendant. While Defendant's felony convictions were not recent or of a violent character, they nevertheless demonstrate that Defendant has a problem with illegal drugs. Defendant testified that he began smoking marijuana when he was fifteen years old and admitted that, at the time he committed the crime, he was smoking marijuana daily and consuming approximately one case of alcohol a week. Defendant admitted that he had continued to use drugs on a daily basis, even after he was indicted on the present charge. We find no error in the trial court's determination that alternative sentencing was improper in this case based on Defendant's criminal history. The trial court's denial of alternative sentencing is further supported by Defendant's lack of potential for rehabilitation, as previously discussed, which is also a proper consideration in determining whether sentence alternatives other than probation are appropriate. See Tenn. Code Ann. § 40-35-103(5) (1997).

Finally, we note that Defendant is not entitled to a sentence involving community corrections. His conviction for attempted aggravated sexual battery, designated a "crime against the person," makes him ineligible. See Tenn. Code Ann. § 40-36-106(a)(2) (1997 & Supp. 2001).

For the forgoing reasons, we find the trial court did not err in denying Defendant probation or any other form of alternative sentencing. Defendant is not entitled to relief on this issue.

## CONCLUSION

Accordingly, we AFFIRM the judgment of the trial court.

 

_____
THOMAS T. WOODALL, JUDGE