IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 1, 2008 Session

## STATE OF TENNESSEE v. STEPHANIE LEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-00955    James M. Lammey, Judge**

**No. W2007-00569-CCA-R3-CD  - Filed October 3, 2008**

The defendant, Stephanie Lee, pled guilty to theft of property over $10,000, a Class C felony, and was sentenced as a Range I, standard offender to four years in the county workhouse. The defendant was also ordered to pay $25,000 in restitution. On appeal, she argues that the trial court erred in denying judicial diversion and an alternative sentence. Following our review, we affirm the trial court's denial of diversion and full probation but order that the defendant serve a sentence of split confinement, with six months to be served in the county workhouse and the remainder on supervised probation. Additionally, we remand the case for entry of a corrected judgment to reflect the defendant's conviction offense, which was omitted from the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified and Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Javier Michael Bailey, Memphis, Tennessee, for the appellant, Stephanie Lee.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

Because the appellate record does not contain the transcript of the guilty plea hearing, we derive our summary of the facts underlying the offense from the presentence report and the defendant's testimony at the sentencing hearing. As we understand, the defendant, a teller and supervisor at Independent Bank in Memphis, took money from the vault on at least thirteen

occasions between May 22, 2003, and April 30, 2004, and falsified bank records to evade detection. In total, the defendant took approximately $43,000.

At the sentencing hearing, counsel for the defendant and the bank stipulated that the defendant had returned $7200 of the stolen money. The defendant testified that she had been employed as a teller and supervisor at Independent Bank for "[a] year and a couple of months" before being accused of the thefts. She said that she began taking money after she had been working at the bank for six to seven months. She acknowledged that on at least thirteen occasions she went to the bank vault, took money, and made inaccurate notations on the register. She agreed with counsel for the bank that she took approximately $43,000. She testified that she agreed to a consent judgment in civil court and explained that, after returning the $7200, she had not made further restitution based on counsel's advice.

The defendant testified that she had never been arrested previously. She stated that during the thefts she was experiencing stress because her husband, who served in the National Guard, had been deployed to Guantanamo Bay, Cuba. She testified that with the money she took she "bought clothes, paid bills, just totally wasted it," but denied that she gambled or had a drug addiction. She stated that she was currently working full-time for a preschool through Arkansas State University and attending Phillips Community College in Helena, Arkansas. She said she planned to repay the money with funds from her job and assistance from her husband.

On cross-examination, the defendant testified that when the bank brought in auditors to investigate the missing money, she told her manager that she was $40,000 short and did not know what had happened. She acknowledged that she was "holding the truth back" but said she did so because she was nervous. She testified that she accomplished the thefts by recording that she had disbursed a sum of money to her teller window and keeping part of the money. She stated that she had worked as a teller at Memphis Area Teachers' Credit Union three years ago but was relieved after three months because her drawer was short. She testified that the credit union did not press charges against her. On cross-examination and voir dire examination by the trial court, she denied that she stole money from the credit union.

Tomeka Woods, a friend of the defendant for over twenty years, testified that the thefts were "totally out of character" for the defendant.

For the State, Tammy Rogers, an accountant and audit overseer for Independent Bank, testified that auditors were performing a general audit when they informed her that they had not received some requested paperwork from the defendant. That same day, Rogers became aware that approximately $40,000 was missing, and she and the teller supervisor began examining the bank records to resolve the discrepancy. The next day, Rogers, counsel for the bank, and another bank employee interviewed all of the employees at the defendant's branch. During the defendant's interview, Rogers confronted her with the allegation that she had been falsifying records. The defendant then admitted that she had been taking money from the vault, recording that it was going to her teller window, and not recording it at the window.

At the conclusion of the proof, the trial court first evaluated the defendant's suitability for judicial diversion and concluded that diversion was inappropriate:

I don't find that the defendant is a suitable candidate for diversion, and I'll tell you why. I'll go through each of these factors because the law says I have to.

"The defendant's amenability to correction."

I see nothing to indicate the defendant's amenability to correction in what I saw today. We have someone who violated the trust of her employer, apparently twice – once before, which was never proven, but she was let go from a credit union for doing basically what she did here for over a year – for at least fourteen – or at least thirteen times, I understand. The victim-impact statement indicated fourteen separate instances of theft from her employer, and it was not an impulsive crime.

So I don't see – if this were a case where she had had some severe problems at home – some sort of – where she had had a child who was facing an operation and didn't have the money, and she took a couple thousand dollars and then felt bad about it and came to her employer and said, "Yes, here, look what I did – I'm sorry – I'm so sorry, I broke under the pressure." It was nothing like that. This was not an impulsive thing. This was a scheme that, if not for the auditors there at the bank, she may very well be doing it to this day if she hadn't been caught.

So, I don't see where there was any proof that she's amenable to correction. In fact, I think it's to the contrary.

"Circumstances of the offense."

Again, it wasn't impulsive. It was over a long period of time. I think State v. Robinson, [139 S.W.3d 661 (Tenn. Crim. App. 2004)] also talks about an offense in which diversion was not granted because it occurred over a long period of time.

You know, there's nothing in the record to show that – I mean, she had a husband who was a police officer and also was in the service and was apparently deployed. I think it was a severe, severe discredit to him that this happened.

I just don't see how she could say that there was any impulsive reason to do this. I mean, this was – apparently she was buying clothes and things like that; and there was no – nothing shown to me that they actually needed this $40,000 from the bank, except maybe she wanted to live a certain way and wasn't willing to sacrifice a few years to earn what she needed.

"The defendant's criminal record."

Although she has no criminal record. That's the way everyone applying for diversion is. I don't see – I don't put too much weight in that. She's in her thirties. She should have known better. She should have known better after the first time. She should have known better after she was let go from the credit union that you can't be stealing from your employer.

So, her criminal record doesn't speak well of her in my opinion because, you know, from the record, I mean there was a lot of speculation as to what might have been her motivation. But maybe she was just never caught before until the credit union caught her. And they, for some reason, decided not to prosecute. But, you know, if we're going to speculate, we can speculate that she just got caught – the first time she really got caught where she was cornered. And then it wasn't until after she was confronted with the apparent mountain of evidence that she finally owned up to having taken this. So, her social history doesn't help her.

. . . .

"The defendant's physical and mental health."

There's nothing in the record to show that she needs any psychological treatment. She's – and she seems to be physically fit.

"The deterrence value to the defendant and others."

Usually, in these situations, we don't have any proof in the record because the record has to have proof of deterrence value – of deterring others. There's always a certain deterrent value to the defendant, obviously, in every criminal case – you know, whether you go to jail – the threat of jail is always a deterrent value, I guess. But the record has to have something in it to show the deterrence value to others, and I find that there is. And I find that's, of course, contained in the victim-impact statement. The bank has a vested interest in making sure that not only do they have trusted – trustworthy employees – but that they know that if they do something wrong – they do steal from the bank – that, first of all, you know, that the customers that come in don't want to do business with a bank where they know there's a thief working there.

Then, again, . . . they also know that they have employees that need to know that, "Hey you can't go around stealing $43,000 from us and get slapped on the wrist." It's not going to happen. And you need to know that if you steal from us, we're going to go to the end of the earth to make sure that you are punished[]. And that's basically what I see in this victim impact statement. Their business is built on trust, and . . . you have to have that. If you have customers who are going to come

in and invest in your bank, because that's what they're doing, you have to have a certain amount of trust.

If you have employees that are going to come work at your bank, you need to know that they are trustworthy. I'm sure that if they had known about the credit-union matter, they would not have hired [the defendant], and they wouldn't be in the situation they're in. They probably spent as much, or more money trying to see that justice is done than what was actually lost. And that's unfortunate for the bank; but I think that their motive is to make sure that their employees see that there is a deterrent value to stealing from their bank. So, I see – that factor is probably the most – the one I put the most weight into as far as denying diversion. And the words they use [are], "It would send the exact wrong message to ou[r] employees that someone who commits theft after theft – and I'm going to add another after theft – from the bank can simply be put on probation and not have to suffer traditional punishment of incarceration for their crimes." I'm in one-hundred-percent agreement to that.

. . . .

. . . And [the bank] did also point out, and I thank them for pointing out the fact that this defendant abused a position of public and private trust – "That she used a special skill that she had in a manner that significantly facilitated the commission or the fulfillment of the offense," and I'm reading from the law as it was prior to June 7th, 2005, and that is the . . . enhancement factor spelled out at [Tennessee Code Annotated section] 40-35-114, which is No. 16. They had indicated No. 14 as it's reflected under the new law, but I am looking at this under the old law. And I agree one-hundred percent; she violated a position of private trust. I imagine every one of the tellers there has access to thousands of dollars on a daily basis – maybe more. I don't know. But they have to be trusted and trustworthy, and this defendant violated this trust.

Also, there's some other things – whether judicial diversion will serve the ends of justice. I don't see how putting [the defendant] on diversion will serve the ends of justice. The criminal justice system takes licks every day. You hear people saying how they don't think the system is fair – they think our system is broken. Putting this person on probation – or rather on diversion – I think would send a strong message to the employees of this bank as well as many others – that the system is broken. So, I don't think it would serve the ends of justice to place her on diversion.

"Her attitude."

I didn't see anything about the defendant's attitude that was either good or bad as it pertains to this. She didn't cop an attitude on the stand, but she, you know – I guess she was truthful enough, but I don't put much weight in that.

"The defendant's behavior since the arrest."

Well, there's nothing to indicate good or bad behavior. I guess she's been – I do know that her husband decided to leave her, [from] the evidence. It's unfortunate, but I'm not going to let that affect whether or not she gets judicial diversion.

"Home environment."

Again, I don't think that – I don't see anything in that, that's any different from any other defendant.

"Past employment."

I think that weighs against her, having been fired for doing the same thing – or being accused of doing the same thing. So, she was put on notice that it was wrong.

"General reputation."

Nothing to indicate other than the three[1] witnesses who said this is out of character for her. But, then again, she did get fired once for doing this – or accused of doing this.

So, mainly for the deterrent effect and the fact that this was not impulsive and the fact that this occurred over an extended period of time, I'm going to deny diversion.

The trial court then addressed the length and manner of the defendant's sentence. The court sentenced the defendant as a Range I, standard offender and applied two enhancement factors: (1) the amount of property taken from the victim was particularly great; and (2) the defendant abused a position of private trust. See Tenn. Code Ann. § 40-35-114(7), (16) (2003). The court found that the mitigating factor that the defendant's conduct neither caused nor threatened serious bodily injury "sort of" applied and that substantial grounds existed tending to excuse or justify the defendant's conduct, though failing to establish a defense. Tenn. Code Ann. § 40-35-113(1), (3) (2003). The

---

[1]During the sentencing hearing, defense counsel stated that he was prepared to present proof from two additional witnesses who would testify as to the defendant's character, but he did not call these witnesses.

court applied no weight to either mitigating factor and, after finding that the defendant was not a suitable candidate for probation, sentenced her to four years in the county workhouse.

## ANALYSIS

The defendant argues that the trial court erred in denying judicial diversion and probation. She contends that she was presumptively eligible for probation and that the trial court did not properly consider and analyze the principles of sentencing in denying probation. The State argues that the defendant has waived her claim regarding judicial diversion and failed to demonstrate that the evidence preponderates against the trial court's denial of diversion and probation. As we will explain, we conclude that the trial court properly denied diversion but erred in denying probation.

### I. Judicial Diversion

Tennessee Code Annotated section 40-35-313 provides that, following a determination of guilt by plea or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2006). A qualified defendant is one who pleads guilty or is found guilty of a misdemeanor or Class C, D, or E felony; has not been previously convicted of a felony or a Class A misdemeanor; and is not seeking deferral for a sexual offense or a Class A or B felony. Id. § 40-35-313(a)(1)(B). If the defendant successfully completes the period of probation, the trial court is required to dismiss the proceedings against him, and the defendant may have the records of the proceedings expunged. Id. § 40-35-313(a)(2), (b). The decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). As such, it will not be disturbed on appeal absent an abuse of discretion. State v. Turco, 108 S.W.3d 244, 246 n.5 (Tenn. 2003). To constitute an abuse of discretion, the record must be devoid of any substantial evidence in support of the trial court's decision. Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant diversion, the trial court considers (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, (f) the deterrence value to the accused as well as others, and (g) whether judicial diversion will serve the interests of the public as well as the accused. Electroplating, 990 S.W.2d at 229; Bonestel, 871 S.W.2d at 168. A trial court should not deny judicial diversion without explaining the factors in support of its denial and how those factors outweigh other factors in favor of diversion. Id.

In denying judicial diversion, the trial court found that the circumstances of the offense and the defendant's amenability to correction mitigated against diversion because she repeatedly violated her employer's trust. The court found that the defendant lacked a criminal record and that her

physical and mental health was good, according no weight to the former factor. The court found that the need for banks to deter employees from theft mitigated heavily against diversion.

Although, as we will explain further below, we conclude that the trial court erred in according no weight to the defendant's lack of criminal record, the court's findings regarding the circumstances of the offense and the need for deterrence are sufficient to justify its denial of judicial diversion.[2]

## II.  Denial of Probation

At the time the defendant committed the offense, a defendant who received a sentence of eight years or less was eligible for probation, subject to certain exceptions.  Tenn. Code Ann. § 40-35-303(a) (2003).  Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law.  See Tenn. Code Ann. § 40-35-303(b).  The burden is on the defendant to show the denial of probation was improper.  Id.; see also State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9-10.  Every sentencing decision necessarily requires a case-by-case analysis. Id.  Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public.  State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).  Further, Tennessee Code Annotated section 40-35-103(1) states that a sentence of confinement should be based on the following three considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

---

[2]The State argues that the defendant has waived her claim regarding diversion by not supporting it with argument or citation to authority.  Tenn. Ct. Crim. App. R. 10(b).  Because we conclude that the defendant is not entitled to relief, we need not address the waiver argument.

In denying probation, the trial court stated:

> Now, the probation considerations. I've looked at the presentence report. I've looked at the defendant's testimony and heard the bank's testimony and their interest in seeing justice be served.
>
> In looking at each factor that I'm required, I find great weight in the effective deterrent value – not just to this defendant but also to others that are similarly situated that would have an opportunity to steal from this bank or other banks in the area. So, I put great weight in the deterrent value – great weight in the fact that it would unduly depreciate the seriousness of this offense.
>
> It is an absolute shame that someone had to do this to their life, but I would have more – I would be more likely to grant probation, if not diversion, if [the defendant] had just come forward after doing it one time and saying, "I'm sorry. I did this. Here's what I took," but that didn't happen. So, I don't feel like [the defendant] is a good candidate for probation, either, and so I'm going to deny probation at this time, as well.

The defendant argues that the trial court did not adequately analyze the principles of sentencing before denying probation and that the denial was therefore "arbitrary and capricious as a matter of law." As we understand, the State replies that the trial court's findings regarding diversion were also relevant to its denial of probation and that these findings provide sufficient support for the trial court's determination.

Initially, we agree with the State that the trial court's findings regarding diversion are also applicable to its denial of probation. Judicial diversion is a form of probation. See State v. Vivian Braxton, No. W2004-02506-CCA-R3-CD, 2005 WL 3059435, at *9 n.4 (Tenn. Crim. App. Nov. 10, 2005), perm. to appeal denied (Tenn. Mar. 20, 2006). Therefore, in denying probation, the trial court found that the circumstances of the offense and the defendant's criminal record mitigated against granting probation. The court accorded great weight to the need to deter the defendant and others from this conduct. We will analyze the trial court's findings.

The trial court found that the defendant's "criminal record does not speak well of her." We discern from the record that the court based this determination on the defendant's testimony that she was relieved from her job at Memphis Area Teachers' Credit Union after her drawer came up short. At the sentencing hearing, the following exchange took place during cross-examination of the defendant:

[Counsel for the State]: Now, going over your [presentence] report, you worked at a bank for about three months, three years back? – a credit union?

[The Defendant]: Yes, sir. Memphis Area Teachers Credit Union.

[Counsel for the State]: And did you just quit or were you relieved?

[The Defendant]: I was relieved.

[Counsel for the State]: Why?

[The Defendant]: Because of shortage in my drawer.

. . . .

[Counsel for the State]: Now, did you tell Independent Bank about your work history with the credit union – did you reveal that?

[The Defendant]: I may or may not have.

[Counsel for the State]: I mean, you couldn't have because they would not have hired you if they had known that you were discharged from the credit union for –

[The Defendant]: Well, just because I was discharged from the credit union doesn't necessarily mean that I took the money.

During voir dire examination by the trial court, the following exchange occurred:

[The Court]: You had a problem at Memphis Area Teachers Credit Union, right?

[The Defendant]: Yes.

[The Court]: And you're saying you didn't take money from them, but they thought you did, and they let you go for that. Is that right?

[The Defendant]: That's right, but I didn't take it.

In denying diversion and probation, the trial court referred to the defendant's separation from the credit union at least four times. These references reflect that the trial court inferred that the defendant had stolen money from the credit union. We conclude that it was improper to rely on this allegation of theft, which was never proven in a court of law nor admitted by the defendant, to support the denial of probation. Just as "[a] trial court should not use evidence merely showing arrests, without more, to enhance a sentence," State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993), a trial court should not use unproven conduct not admitted by the defendant to support a denial of probation. Asked about her termination from the credit union, the defendant

-10-

acknowledged that her drawer came up short but denied that she stole any money. The State offered no extrinsic proof that the defendant stole from the credit union. This alleged criminal conduct does not support the denial of probation. Excluding this allegation, the defendant has no prior criminal record, which weighs in favor of granting probation. See State v. Bryant, 775 S.W.2d 1, 5 (Tenn. Crim. App. 1988).

The trial court accorded great weight to the need for deterrence of theft from financial institutions. Although deterrence is a factor to be considered, it will not alone support a denial of alternative sentencing. See Ashby, 823 S.W.2d at 170. Trial courts are accorded significant latitude in determining whether deterrence is necessary and incarceration appropriately addresses that need. Hooper, 29 S.W.3d at 10. We will presume that a trial court's decision to incarcerate a defendant on the basis of a need for deterrence is correct if any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes. Id. In making these determinations, a trial court is to consider: (1) whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or the state as a whole; (2) whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior; (3) whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case; (4) whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and (5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions. Id. at 10-12.

In this case, the trial court did not explicitly analyze these factors in finding a need for deterrence. A majority of the factors mitigate against the need for deterrence. There is no evidence in the record that other incidents of theft were increasingly present in the community, jurisdiction, or state; the defendant's crime and conviction received substantial publicity beyond that normally expected; or the defendant was a member of a criminal enterprise. As we have discussed previously, there was no evidence that the defendant had previously engaged in the same criminal conduct, notwithstanding an inference that could be drawn from the defendant's dismissal from the credit union. Conversely, the factor that the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain weighs in favor of the need for deterrence. Because four of the five factors mitigate against a need for deterrence, we conclude that the trial court relied too heavily on this factor in denying the defendant an alternative sentence. See State v. Charles Stillwell, No. W2000-00392-CCA-R3-CD, 2001 WL 468659, at *5 (Tenn. Crim. App. May 1, 2001).

The trial court did make several findings which are supported by the record. The court found that the circumstances of the offense mitigated against an alternative sentence because the offense took place over a long period of time and the defendant did not show that she took the money to satisfy an important need. The court also found that confinement was necessary to avoid

depreciating the seriousness of the offense. These findings are sufficient to justify a denial of full probation.

We conclude, however, that they alone are insufficient to support a complete denial of alternative sentencing. We find Stillwell analogous to the case at bar. There, the defendant, a manager at a department store, stole approximately $150,000 by repeatedly taking cash and checks from the deposit bag and falsifying records to show that an armored car had picked up the deposit. Stillwell, 2001 WL 468659, at *1. He pled guilty to theft over $10,000 in exchange for a six-year sentence. At the sentencing hearing, he acknowledged that he was guilty and testified that at first he took the money to protect his family from future job uncertainty, but later began gambling the money away. Id. at *2. The trial court denied the defendant's request for an alternative sentence based on the circumstances of the offense, the needs for deterrence and to avoid depreciating the seriousness of the offense, and the defendant's lack of credibility as to why he committed the offense. Id. at *4. This court reversed the trial court's denial of alternative sentencing, reasoning that although the defendant was not a suitable candidate for full probation, the trial court's complete denial of alternative sentencing was inappropriate because its reliance on the need for deterrence was not well supported by the record. Id. at *5. This court reversed the trial court's denial of an alternative sentence and ordered a sentence of split confinement with one year incarceration and five years supervised probation. Id. at *6.

In this case, similarly, the defendant pled guilty and acknowledged at the sentencing hearing that she committed the thefts. The trial court denied the defendant's request for an alternative sentence based primarily on the need for deterrence. We conclude, as in Stillwell, that the trial court overemphasized the need for deterrence but that some incarceration is necessary to avoid depreciating the seriousness of the offense. Accordingly, we reverse the judgment of the trial court and order that the defendant serve a sentence of split confinement, with six months to be served in the county workhouse and the remainder on supervised probation.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the trial court's denial of judicial diversion, as well as of full probation, but conclude that, based upon the record, a sentence of split confinement is appropriate. Accordingly, we remand the matter for entry of a judgment ordering that the defendant serve six months in the county workhouse, with the remainder of the sentence to be served on supervised probation. Additionally, we note that the judgment does not list the offense of which the defendant was convicted. The amended judgment should reflect that the defendant was convicted of theft of property over $10,000, a Class C felony.

_____
ALAN E. GLENN, JUDGE