IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 20, 2006

## STATE OF TENNESSEE v. JERRY LYNN OSBORNE, JR.

**Appeal from the Criminal Court for Sullivan County**
**Nos. S50,631, S50,761    Jerry Beck, Judge**

————————————

**No. E2006-01100-CCA-R3-CD - Filed February 8, 2007**

————————————

In May of 2005, the Defendant, Jerry Lynn Osborne, Jr.[1], was indicted for one count of theft under $500, seven counts of identity theft, and seven counts of fraudulent use of a debit card.  In July of 2005, the Defendant was indicted for one count of driving under the influence and one count of theft over $1000.  He pled guilty to all of the indicted charges and received an effective sentence of four years in the Department of Correction.  The Defendant requested an alternative sentence of either probation or community corrections, which the trial court denied.  The Defendant now argues that the trial court erred by denying his request for an alternative sentence.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., JJ., joined.

Terry L. Jordan, Blountville, Tennessee, for the appellant, Jerry Lynn Osborne, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Greeley Wells, District Attorney General; and James F. Goodwin, Assistant District Attorney General, for the appellee, State of Tennessee.

————————————

[1]The initial indictment referred to the Defendant as "Jerry I. Osborne."  However, the subsequent indictment, the judgments, and the transcripts refer to the Defendant as "Jerry Lynn Osborn."  We will use the name "Jerry Lynn Osborne" in this opinion.

**OPINION**

**Background**

On May 31, 2005, the Defendant was indicted in case number S50,631 for one count of theft under $500, seven counts of identity theft, and seven counts of fraudulent use of a debit card. The stipulation of facts at the guilty plea hearing showed the following factual basis for the plea:

> [O]n or about February 16, 2005, the Defendant took a debit card, belonging to [his half-sister] from her home and used the card several times on February 16th and 17th, 2005, and that he used it without her permission. . . . The Defendant used the victim's debit card and her PIN number to effect [sic] taking money from her . . . bank account.

The subsequent investigation determined that the Defendant accumulated $543.50 in unauthorized charges in seven separate transactions.

On July 13, 2005, the Defendant was indicted in case number S50,761 for one count of driving under the influence and one count of theft over $1000. At the guilty plea hearing, the State offered the following factual support for these charges:

> [O]n or about March 5th, 2005, . . . Officer Graham [of the Bristol Police Department] responded to the Shell station on Volunteer Parkway in Bristol, Sullivan County, Tennessee. He went there in reference to two . . . subjects in a white Ford Tempo . . . possibly intoxicated and throwing glass out of the vehicle. While Officer Graham was in route to the Shell station, he received a dispatch call stating that the vehicle had pulled out of the Shell and was traveling south on Volunteer Parkway. A short time later he received another dispatch call stating that the vehicle made a U-turn and was now traveling north on Volunteer Parkway. Officer Johnson, also of the Bristol Tennessee Police Department, was able to located [sic] the vehicle on Volunteer Parkway . . . .
>
> Officer Graham spoke to the driver of the vehicle, who was later identified by his Tennessee Driver's License as the Defendant, Jerry Lynn Osborne, Jr., and while speaking with [the Defendant], Officer Graham noticed or detected a strong odor of alcohol about his person. [The Defendant] advised that he'd had two . . . twenty-two . . . ounce beers about two . . . hours prior to this encounter with the police.
>
> Officer Graham requested [the Defendant] to perform several field sobriety tests, which he was unable to perform satisfactorily. At that point, the officer placed [the Defendant] under arrest for driving under the influence.

Officer Johnson advised that the vehicle may be stolen, because Officer Johnson noticed that the passenger side window was broken out; that the steering column had been damaged, and that there were no keys in the ignition.

The officers ran the tag on the vehicle, which came back as belonging to Frontier Health in Kingsport, also in Sullivan County.

Dispatch made contact with an employee of Frontier Health, . . . [who] advised the vehicle was supposed to be parked on the lot at Frontier Health and that no one should have possession of the vehicle. Later, it was determined by officers that the value of the car was approximately Five Thousand Dollars . . . , and that the damage to the car, to the window and to the steering column, was approximately Six Hundred Dollars . . . .

[The Defendant] agreed to take a test. A blood test was administered. The blood alcohol came back as a point one three (.13).

The Defendant pled guilty to all of the seventeen indicted offenses on January 3, 2006. In accordance with the plea agreement, the Defendant was sentenced to two years in case number S50,631 to run consecutively to a two-year sentence in case number S50,761.[2] The Defendant's total effective sentence was four years in the Department of Correction. The manner of service of the sentences was left to the discretion of the trial court.

On April 27, 2006, the Sullivan County Criminal Court held an alternative sentencing hearing. The Defendant testified that he was twenty-two years old and had three children, ages four, two, and six months. The Defendant testified that he supported his wife and three children with his managerial position at a Wendy's restaurant. The Defendant stated that his job involved his handling money and that he received no complaints regarding his financial responsibilities. The Defendant stated that he had a vandalism conviction, "a number of criminal trespass [convictions,]" and three pending driving offense charges. The Defendant explained that he had an alcohol and drug problem and that he resorted to criminal activity to fund his cocaine use; however, the Defendant stated that alcohol and drug use was no longer a problem in his life even though he had not received formal counseling since his recent stints of drug use. The Defendant stated that, at his interview for the pre-sentence report, he tested negative for any illegal substances. The Defendant also volunteered to take a drug test that day to prove he was not using illegal substances. The Defendant requested an alternative sentence so he would be able to support his dependent wife and children.

On cross-examination, the Defendant admitted that his prior criminal record since age eighteen, which had been a span of only four years, consisted of seven pages of listed offenses. The Defendant admitted that he had been placed on supervised probation at least twelve times since he

---

[2] The Defendant received concurrent sentences for each of the counts in case number S50,631 and also received concurrent sentences for each of the counts in case number S50,761.

was eighteen years old. The Defendant stated that he had not used alcohol for approximately five months and had not used cocaine or non-prescribed pain medications for approximately nine months. The Defendant admitted that he did use cocaine while he was on bond for prior charges and also stated that he used marijuana while he was incarcerated during the previous year. The Defendant also admitted to using methamphetamine but stated that that was "a long time ago."

The presentence report reflects that, at the time of sentencing, the Defendant was twenty-two years old and married with three children. His formal education ended during the tenth grade. He has a history of employment as an hourly worker, most recently as a cook and night manager at a Wendy's restaurant.

At the conclusion of the sentencing hearing, the trial court denied the Defendant's request for an alternative sentence, reasoning as follows:

> The Defendant had a prior shock incarceration back on [June 15, 2001] on a possession of crack charge. He has, by my count, . . . sixteen . . . prior suspended sentences given by General Sessions Court Judges. . . . The Defendant is facing four years. Judges have tried shock incarceration previously. There has been treatment before. The Defendant has just been in trouble all of his life for something. He does have a drug and probably also an alcohol problem, which the Court is required to consider under residential community corrections or community corrections. He's just built too much of a record. He does work. He has a substantial job at this time, but he just has too many prior offenses. Probation will be denied. The Court's also considered community corrections and residential community corrections, but it's just a continuing thing. Other Judges have failed.

**Analysis**

The Defendant's sole issue on appeal is whether the trial court erred in denying an alternative sentence. A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

## A. Probation

The Defendant first argues that the trial court erred by not granting him probation. A defendant is eligible for probation if the actual sentence imposed upon the defendant is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute.[3] See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. See id. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

The trial court found that the Defendant did not deserve probation because he had already been given "sixteen . . . prior suspended sentences" and had "too much of a record." The trial court noted that the Defendant had "been in trouble all of his life for something" and that "prior shock incarceration" was unsuccessful in deterring the Defendant from committing criminal offenses. Therefore, the trial court denied probation.

---

[3] For crimes committed on or after June 7, 2005, sentences of ten years or less are eligible to be served on probation if not specifically excluded by statute.

On appeal, the Defendant claims the trial court erred because the presumption that he deserved an alternative sentence had not been rebutted by "evidence to the contrary." See Tenn. Code Ann. § 40-35-102(6); see also State v. Hooper, 29 S.W.1, 5 (Tenn. 2000). The Defendant states that, "while the [Defendant] does have a history of criminal conduct, the nature of his prior convictions are not of a serious nature." The Defendant further asserts that his criminal offenses "do not rise to the level that would demand incarceration to avoid depreciating their serious nature" because they are "property crime type offenses," which "the legislature has deemed probatable and no one was harmed in the commission of the criminal acts." Finally, the Defendant argues that his "drug problem was the driving force behind the commission of these acts," but he states that he no longer uses drugs or alcohol, has obtained gainful employment, and supports his wife and three children.

The State argues that the Defendant's criminal record is lengthy and that the numerous previous suspended sentences demonstrate that confinement is necessary to deter the Defendant from further criminal activity. The State contends that "[t]here is no presumption in this case that the [D]efendant is a [favorable] candidate for probation, in light of his prior criminal history and prior unsuccessful attempts at rehabilitation." Therefore, the State asserts that "[t]he record fully supports the trial court's findings and its determination denying the [D]efendant an alternative sentence."

Even assuming that the Defendant was entitled to the presumption in favor of alternative sentencing, the presumption was overcome by evidence to the contrary. First, the trial court found that the Defendant has "a long history of criminal conduct." See Tenn. Code Ann. § 40-35-103(1)(A). The presentence report reflects two vandalism convictions, three aggravated criminal trespass convictions, six criminal trespass convictions, and several traffic and alcohol related offenses. He also has a significant juvenile court history. His criminal history alone provides sufficient "evidence to the contrary" to overcome the presumption favoring an alternative sentence, but the trial court properly found that the Defendant also fits into another category provided by the legislature. Specifically, the trial court found that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Id. § 40-35-103(1)(C). The trial court particularly focused on the fact that the "prior shock incarcerations" had no effect on the Defendant and that he had "sixteen . . . prior suspended sentences" that were unsuccessful because the Defendant had continued his criminal acts.

In light of the State's proof and the Defendant's proof, the trial court properly found that the Defendant failed to meet his burden of demonstrating his suitability for probation. Although the Defendant primarily argues on appeal that confinement is not necessary to "avoid depreciating the seriousness of the offense[s,]" see Tenn. Code Ann. § 40-35-103(1)(B), the trial court did not base its denial of probation upon this factor. Therefore, we conclude that the trial court did not err in denying the Defendant's request for probation.

### B. Community Corrections

Next, the Defendant argues that the trial court erred by not granting him an alternative sentence of community corrections. The Community Corrections Act was meant to provide an

alternative means of punishment for "selected, nonviolent felony offenders . . . , thereby reserving secure confinement facilities for violent felony offenders." Tenn. Code Ann. § 40-36-103(1); see also State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). Pursuant to statute, persons who satisfy all of the following minimum criteria are eligible for participation in a community corrections program:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (3) Persons who are convicted of nonviolent felony offenses;
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]
> (6) Persons who do not demonstrate a pattern of committing violent offenses[.]

Tenn. Code Ann. § 40-36-106(a). However, persons who are sentenced to incarceration or who are on escape status at the time of consideration will not be eligible, even if they meet these criteria. See id.

Persons who do not otherwise satisfy the minimum criteria and who would usually be considered unfit for probation due to histories of chronic alcohol abuse, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community may be considered eligible for participation in a community corrections program. Id. § 40-36-106(c).

Even though an offender meets the requirements for eligibility, he or she is not automatically entitled to participation in a community corrections program. See State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998); State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987). Rather, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. See Tenn. Code Ann. § 40-36-106(d).

The trial court denied the Defendant's request for community corrections for the same reasons that he denied probation: the Defendant's lengthy criminal history and the fact that prior sentences involving release in the community had not served to deter the Defendant's criminal activity. The trial court specifically noted that the Defendant's alcohol and drug problems were taken into account, as was his effort in obtaining gainful employment.

On appeal, the Defendant argues that the trial court erred in denying him a community corrections sentence because his crimes were non-violent "property crime[s.]" He also asserts that

he could receive drug and alcohol treatment in a community corrections program even though the Defendant testified that he no longer used drugs or alcohol. The State responds that the trial court did not err by relying on the Defendant's extensive criminal record and the numerous failed attempts with measures less restrictive than incarceration.

We cannot conclude that the trial court erred by denying the Defendant an alternative sentence of community corrections. Although the Defendant qualifies for sentencing under the Community Corrections Act, the Act provides that the criteria shall be interpreted as minimum standards to guide a trial court's determination of whether that offender is eligible for community corrections. See Tenn. Code Ann. § 40-36-106(d). Our sentencing scheme permits the trial court to determine whether the Defendant, in light of all the circumstances, merits an alternative sentence to incarceration. Given the Defendant's lengthy criminal record and the Defendant's continued criminal behavior despite numerous prior suspended sentences, we conclude that the trial court was within its discretion in ordering the Defendant to serve his sentence in confinement.

**Conclusion**

Based upon the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE